Brian BELL and Sue R. Bell

v.

The UNITED STATES.

No. 179–74.

United States Court of Claims.

Jan. 24, 1979.

Morris E. Flater, Jr., Washington, D. C., attorney of record, for plaintiffs.

Myron C. Baum, Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant. Kenneth R. Pike, Robert S. Watkins, and Theodore D. Peyser, Jr., Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, and NICHOLS and BENNETT, Judges.

OPINION

PER CURIAM:

This case comes before the court on review of the trial judge's recommended opinion and findings of fact. This is an income

tax refund suit in which plaintiff[1] claims that he was improperly denied deductions for traveling expenses under 26 U.S.C. § 162(a)(2). The trial judge found that plaintiff was not entitled to recover because the expenses had not been incurred while away from home nor in pursuit of a trade or business.[2] After careful consideration of oral argument, the briefs and other papers before us, we conclude that the trial judge's result was correct and affirm it solely on the basis that the claimed expenses were not incurred while away from home.[3]

Plaintiff, during the tax years in question, 1968 and 1971, was employed by the United States Information Agency (USIA) as a foreign service information officer. Both in 1968 and in 1971 plaintiff was ordered to take "home leave" by the USIA pursuant to 22 U.S.C. § 1148(a). Home leave is a leave of absence from regular duties which must be taken in the United States, its territories or possessions. It is earned by employees according to several factors, the most important of which is the length of time they have spent in continuous service outside the United States.

In 1968 plaintiff was stationed in Tehran, Iran. Prior to taking home leave, plaintiff was advised that his position was being abolished and that he would be transferred after completion of home leave to a new post in Dacca, Pakistan. Plaintiff and his family moved out of their residence there. Their household effects and personal effects were packed for shipment to Dacca, plaintiff's next duty station, and they sold their car. Throughout the period during which taxpayer took home leave in 1968, the Bells' household effects and much of their personal effects were stored in a warehouse in Tehran. These goods were later transferred to Dacca after plaintiff commenced his assignment there. Throughout the periods during which taxpayer took home leave in 1971, the Bells' household goods, automobile and most of their personal effects remained at their duty station in Dacca. Thereafter, they were transferred to Washington, D. C., plaintiff's next duty post after he completed home leave. Plaintiff abandoned his abode when departing on home leave. The Bells did not maintain a residence in Tehran or Dacca during the period of plaintiff's home leave in 1968 and 1971, respectively, and had no continuing living costs whatever associated with either location. For ministerial purposes, at all times while plaintiff was on home leave in 1968 and 1971, his fitness reports, personnel file and pay records were retained at his old duty posts. These records remained at his old duty posts and plaintiff was retained on the payroll of his old duty posts at all times until he was reassigned and until he actually reported to his new duty posts.

During his home leave, plaintiff and his family traveled around the United States primarily for their personal pleasure. He personally incurred expenses for travel, meals and lodging which he seeks to deduct[4] from his gross income as a business expense under section 162(a)(2) of the Internal Revenue Code.[5]

In *Commissioner v. Flowers*, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946), the Su-

---

1. Brian Bell's spouse, Sue R. Bell, is also a plaintiff in this case on account of having filed a joint federal income tax return. Hereinafter, we will refer only to Brian Bell as plaintiff.

2. We find that it is unnecessary to reach the question of whether the expenses were incurred in pursuit of a trade or business.

3. For this opinion, we have drawn liberally from the trial judge's well-reasoned report, which the parties have received and which we find unnecessary to reproduce here, although we adopt his findings and conclusions to the extent addressed herein.

4. Plaintiff only claims deductions for his own expenses and not for those of his family. Plaintiff had some brief duty assignments while in the United States for which he received per diem and travel expenses.

5. 26 U.S.C. § 162(a) provides:
    "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—
    　　*　　*　　*　　*　　*　　*
    "(2) traveling expenses * * * while away from home in the pursuit of a trade or business; and
    　　*　　*　　*　　*　　*　　*

preme Court set forth three conditions which had to be satisfied before a travel expense deduction would be allowed under the 1939 Internal Revenue Code.[6] The conditions were as follows:

(1) The expense must be a reasonable and necessary traveling expense, as that term is generally understood. This includes such items as transportation fares and food and lodging expenses incurred while traveling.

(2) The expense must be incurred "while away from home."

(3) The expense must be incurred in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer. Moreover, such an expenditure must be necessary or appropriate to the development and pursuit of the business or trade.

*Commissioner v. Flowers, supra,* 326 U.S. at 470, 66 S.Ct. 250. It is the second condition which concerns us here.

The parties disagree as to the proper place for fixing a taxpayer's "tax home" for the purposes of the deduction. Plaintiff alleges that a taxpayer's tax home is the locality of his principal place of business, citing, among other cases, *Commissioner v. Stidger,* 386 U.S. 287, 87 S.Ct. 1065, 18 L.Ed.2d 53 (1967); *Ney v. United States,* 171 F.2d 449 (8th Cir. 1948); and *Henson v. United States,* 338 F.Supp. 599 (S.D.Tex. 1971). Defendant, on the other hand, claims that a taxpayer's tax home, under the unique facts of this case, is his personal residence, citing, among others, *Brandl v. Commissioner,* 513 F.2d 697 (6th Cir. 1975); *Rosenspan v. United States,* 438 F.2d 905 (2d Cir.), *cert. denied,* 404 U.S. 864, 92 S.Ct. 54, 30 L.Ed.2d 108 (1971); *Scotten v. Commissioner,* 391 F.2d 274 (5th Cir. 1968); and *James v. United States,* 308 F.2d 204 (9th Cir. 1962).

The Supreme Court in *Flowers* deliberately declined the opportunity to decide between these differing definitions of a taxpayer's home. *Commissioner v. Flowers, supra,* 326 U.S. at 472, 66 S.Ct. 250. When faced with the problem of whether the taxpayer's tax home was at his residence or at his place of business, it examined instead the business necessity, under the third condition, for the taxpayer's expenditures to, from, and at his employer's principal place of business and found it wanting. In *Stidger,* the Supreme Court did resolve the conflict between a military serviceman's actual residence and his place of business (duty post) in favor of his duty post. The Court, however, resolved this issue on the unique facts applicable to military taxpayers and found it unnecessary to accept this choice "in all of its myriad applications." *Commissioner v. Stidger, supra,* 386 U.S. at 292, 87 S.Ct. at 1069.

As remarked by the Court in *Flowers,* "[w]hether particular expenditures fulfill these three conditions so as to entitle a taxpayer to a deduction is purely a question of fact in most instances." *Commissioner v. Flowers, supra,* 326 U.S. at 470, 66 S.Ct. at 252. We believe that much of the problem in differing definitions is the result of attempting to conceptualize the reasons for decisions which are based on widely varying factual situations. However, we think that there is one important factual predicate upon which the existence of the controversy hinges. The Tax Court, in *Kroll v. Commissioner,* 49 T.C. 557, 561–62 (1968), has stated as follows:

This Court has long and consistently held that "home" as used in section 162 means the vicinity of the taxpayer's principal place of employment and not where his personal residence is located, if such residence is located in a different place from his principal place of employment.

Thus, the conflict depends on the presence of differing situs and the perceived necessity for making a choice of the taxpayer's home between them. Where two competing sites do not exist, however, there is no

---

**6.** Int.Rev.Code of 1939, ch. 1, § 23(a)(1)(A), 56 Stat. 819 (now I.R.C. § 162(a)(2)) is the same as section 162(a)(2) in all relevant aspects.

reason for abandoning the commonsense meaning of the word home as a person's residence or abode. *See Rosenspan v. United States, supra.* The trial judge found that plaintiff did not have a residence or abode or any living expense in Tehran in 1968 or in Dacca in 1971 during the periods of home leave, and had no place of residence in the United States. The trial judge's findings of fact are presumed correct and we see no basis for disturbing these. *See* Rule 147(b).

NICHOLS, Judge, dissenting:

With all respect, I dissent. The essence of the court's decision is that a homeless wanderer cannot qualify his travel expenditures for the involved income tax deduction because he cannot be "away" from a nonexistent "home." The cases cited for this proposition are such as *Brandl v. Commissioner,* 513 F.2d 697 (6th Cir. 1975) (manufacturer's technical representative who spent near to ten months a year "on the road"); *Rosenspan v. United States,* 438 F.2d 905 (2d Cir.), *cert. denied,* 404 U.S. 864, 92 S.Ct. 54, 30 L.Ed.2d 108 (1971) (traveling salesman); *Scotten v. Commissioner,* 391 F.2d 274 (5th Cir. 1968) (traveling salesman); and *James v. United States,* 308 F.2d 204 (9th Cir. 1962) (traveling salesman). The rationalization of these cases is that a homeless person, unlike others, does not bear expenses duplicated by the cost of lodging and subsistence incident to his travel status, on the one hand, and maintaining an only temporarily abandoned home, on the other. Moreover, Congress allows the business traveler, if he can deduct at all, to deduct all his expenses; thus if he bears the cost of no home, he gets a large deduction for ordinary personal expenses as well as those for business.

The court here assumes that plaintiff had no home during his home leave periods because his quarters at the duty post were surrendered and his effects were in storage. This, I think, is debatable because the previous post of duty remained plaintiff's "home" during his home leave periods for administrative purposes and he remained on its payroll. It looks as if, for State Department purposes, none of its employees are homeless. Conceding, however, that plaintiff was homeless during these periods, it was a temporary condition. It appears to me a person temporarily homeless between his occupancy of one home and another, could be described in ordinary speech as "away from home" and that the position of one permanently homeless is entirely different. Moreover, one temporarily homeless is not spared the cost of maintaining his home, as the permanently homeless person is. To the contrary, for most persons this condition of temporary homelessness is the source of more expense in a given time than is the condition of having a home. Few, with say a three months' vacation trip in prospect, would give up their homes, expecting to get others three months later, with any idea of saving money. The nature of the expense is merely transmuted from rent, real estate taxes, utilities, etc., to moving and storage charges, realtor's commissions, and the like. With the present desperate search for revenue by the IRS, I can well imagine the proof that will be required of claimants for § 162(a) deductions: that they maintained homes to be away from during every day of every travel status period, nay, that they did not lapse into a state of homelessness for as much as a single hour. With the present exceptionally severe inflation in travel costs, deductions under § 162(a) become more important as travel reimbursement by employers such as the U. S. Government becomes inadequate. Thus the court has created a new arena for battle between taxpayers and the IRS, one in which much blood will be shed and many martyrs made.

I would follow *Hitchcock v. Commissioner,* 578 F.2d 972 (4th Cir. 1978), and *Stratton v. Commissioner,* 448 F.2d 1030 (9th Cir. 1971) as to the issue dealt with in these opinions, whether the travel was in pursuit of trade or business. Both courts rely on the fact that the travel was in no sense at the employee's option. The employer required it. Apparently those plaintiffs were never homeless, so, conveniently for our present majority, no precedent was made on that issue.

Probably there is a feeling on the part of the court that deduction for expenses of home leave travel would be somewhat of a bonanza for the foreign service officer, with his other expenses incident to the peculiar nature of his service as well provided for as they are. The Supreme Court in *Commissioner v. Stidger*, 386 U.S. 287, 294, 87 S.Ct. 1065, 18 L.Ed.2d 53 (1967), refers to the system of express tax free benefits allowed a military officer serving at a foreign station as refuting the idea that the general references to service "away from home" in the predecessor of § 162(a) include him. There is perhaps, therefore, the highest authority for taking such matters into account in case any doubt creeps into the court's mind as to how that section applies to the instant situation. I think, however, that the court, if it concludes the homeless taxpayer's bed or beds were all roses, does so on insufficient grounds.

Taxpayer's itineraries are given in the findings, 33 and 42. The 1971 trip, more than that of 1968, includes some well known tourist traps, and 20 days at a dude ranch. For the most part, in both years, his wanderings look like those of a lost soul. An officer who took seriously his supposed duty of constituting himself a one-man Gallup poll, to ascertain personally how home-bound Americans were thinking on political, economic, and cultural matters, could easily have a most miserable home leave, and return to his duty post with a sense of profound relief. He might go to a dude ranch though he could not ride a horse, or charter a sloop on the Chesapeake, though incurably a victim of seasickness. Here the trial judge is very cautious and balanced in his findings, only saying the home leave "nearly all" was "spent on activities *in the nature of* a vacation and attending to medical problems." (Emphasis supplied.) Finding 23. Something *in the nature of* something else is not, semantically, quite that thing itself. In his opinion he casts prudence more fully aside, asserting flat out that "the primary purpose of taxpayer's travels on home leave was pleasure." He doesn't say the purpose was achieved, and for many, the search for pleasure is never successful. The court has plaintiff and his family traveling "around the United States for their personal pleasure." The medical problems, not that they matter, are forgotten. Thus subtly, as we get further from the fact-finding process, is built up the picture of a greedy taxpayer, who, not satisfied with a triennial period of wine and roses denied ordinary citizens, has the outrageous effrontery to seek to deduct its cost from his income tax. I think this plaintiff is entitled to the presumption of good faith we allow to all government officials, and that he made a good faith effort to get reacquainted with his country, as he was duty bound to do. The trial judge so found. Finding 24. Whether he and his family enjoyed themselves to boot, is neither here nor there. I hope they did, but whether they did or whether they were utterly miserable, the applicable law is the same. The condition of homelessness which is decisive in the court's view, does not control nor is controlled by whether the officer had a good time during his home leave or not.

The court must consider that it is making new law for all § 162(a) claimants, few of whom are as generously looked after by their employers as Foreign Service Officers are.

I would reverse the trial judge and remand for plaintiff to prove, if he could, the quantum of his deductions.

## CONCLUSION OF LAW

The court agrees with the trial judge's findings and conclusion that plaintiff, being without any place of residence, did not have a home to be away from during his travels while on home leave, and, therefore, he was not entitled to deductions for unreimbursed expenses for transportation, meals and lodging during the periods of home leave.[7] The petition is dismissed.

---

7. Plaintiff also cites two cases, *Hitchcock v. Commissioner*, 578 F.2d 972 (4th Cir. 1978), and *Stratton v. Commissioner*, 448 F.2d 1030 (9th Cir. 1971), which concluded that traveling expenses incurred by a foreign service officer while on home leave were deductible under

I.R.C. § 162(a)(2). Since the question of whether plaintiffs were away from home was not at issue in these cases, we conclude that they have no relevance herein.