Soterios and Catharine HANTZIS,
Petitioners, Appellees,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent, Appellant.

No. 80–1140.

United States Court of Appeals,
First Circuit.

Argued Sept. 5, 1980.

Decided Jan. 7, 1981.

As Amended Jan. 28, 1981.

James A. Riedy, Atty., Tax Div., Dept. of Justice, Washington, D. C., with whom M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews and Jonathan S. Cohen, Attys., Tax Div., Dept. of Justice, Washington, D. C., were on brief, for respondent, appellant.

Catharine W. Hantzis, pro se with whom Soterios C. Hantzis was on brief, pro se.

Before CAMPBELL and BOWNES, Circuit Judges, and KEETON,* District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

The Commissioner of Internal Revenue (Commissioner) appeals a decision of the United States Tax Court that allowed a deduction under 26 U.S.C. § 162(a)(2) (1976) for expenses incurred by a law student in the course of her summer employment. The facts in the case are straightforward and undisputed.

* Of the District of Massachusetts, sitting by designation.

In the fall of 1973 Catharine Hantzis (taxpayer), formerly a candidate for an advanced degree in philosophy at the University of California at Berkeley, entered Harvard Law School in Cambridge, Massachusetts, as a full-time student. During her second year of law school she sought unsuccessfully to obtain employment for the summer of 1975 with a Boston law firm. She did, however, find a job as a legal assistant with a law firm in New York City, where she worked for ten weeks beginning in June 1975. Her husband, then a member of the faculty of Northeastern University with a teaching schedule for that summer, remained in Boston and lived at the couple's home there. At the time of the Tax Court's decision in this case, Mr. and Mrs. Hantzis still resided in Boston.

On their joint income tax return for 1975, Mr. and Mrs. Hantzis reported the earnings from taxpayer's summer employment ($3,750) and deducted the cost of transportation between Boston and New York, the cost of a small apartment rented by Mrs. Hantzis in New York and the cost of her meals in New York ($3,204). The deductions were taken under 26 U.S.C. § 162(a)(2) (1976), which provides:

"§ 162. Trade or business expenses

(a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\* \* \* \* \* \*

(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business . . . ."

The Commissioner disallowed the deduction on the ground that taxpayer's home for purposes of section 162(a)(2) was her place of employment and the cost of traveling to and living in New York was therefore not "incurred . . . while away from home."

The Commissioner also argued that the expenses were not incurred "in the pursuit of a trade or business." Both positions were rejected by the Tax Court, which found that Boston was Mrs. Hantzis' home because her employment in New York was only temporary and that her expenses in New York were "necessitated" by her employment there. The court thus held the expenses to be deductible under section 162(a)(2).[1]

In asking this court to reverse the Tax Court's allowance of the deduction, the Commissioner has contended that the expenses were not incurred "in the pursuit of a trade or business." We do not accept this argument; nonetheless, we sustain the Commissioner and deny the deduction, on the basis that the expenses were not incurred "while away from home."

### I.

■ Section 262 of the Code, 26 U.S.C. § 262 (1976), declares that "except as otherwise provided in this chapter, no deductions shall be allowed for personal, living, or family expenses." Section 162 provides less of an exception to this rule than it creates a separate category of deductible business expenses. This category manifests a fundamental principle of taxation: that a person's taxable income should not include the cost of producing that income. *See* Note, *The Additional Expense Test: A Proposal to Help Solve the Dilemma of Mixed Business and Personal Expenses,* 1974 Duke L.J. 636, 636. "[O]ne of the specific examples given by Congress" of a deductible cost of producing income is travel expenses in section 162(a)(2). *Commissioner v. Flowers,* 326 U.S. 465, 469, 66 S.Ct. 250, 252, 90 L.Ed. 203 (1946). *See* Rev.Rul. 60–16, 1960–1 C.B. 58, 60.

The test by which "personal" travel expenses subject to tax under section 262 are distinguished from those costs of travel necessarily incurred to generate income is em-

---

1. The court upheld the Commissioner's disallowance of a deduction taken by Mr. and Mrs. Hantzis on their 1975 return for expenses in- curred by Mrs. Hantzis in attending a convention of the American Philosophical Association. Mr. and Mrs. Hantzis do not appeal that action.

bodied in the requirement that, to be deductible under section 162(a)(2), an expense must be "incurred ... in the pursuit of a trade or business." In *Flowers* the Supreme Court read this phrase to mean that "[t]he exigencies of business rather than the personal conveniences and necessities of the traveler must be the motivating factors." 326 U.S. at 474, 66 S.Ct. at 254.[2] Of course, not every travel expense resulting from business exigencies rather than personal choice is deductible; an expense must also be "ordinary and necessary" and incurred "while away from home." 26 U.S.C. § 162(a)(2) (1976); *Flowers*, 326 U.S. at 470, 66 S.Ct. at 252. But the latter limitations draw also upon the basic concept that only expenses necessitated by business, as opposed to personal, demands may be excluded from the calculation of taxable income.

With these fundamentals in mind, we proceed to ask whether the cost of taxpayer's transportation to and from New York, and of her meals and lodging while in New York, was incurred "while away from home in the pursuit of a trade or business."

## II.

■ The Commissioner has directed his argument at the meaning of "in pursuit of a trade or business." He interprets this phrase as requiring that a deductible traveling expense be incurred under the demands of a trade or business which predates the expense, *i. e.*, an "already existing" trade or business. Under this theory, section 162(a)(2) would invalidate the deduction taken by the taxpayer because she was a full-time student before commencing her summer work at a New York law firm in 1975 and so was not continuing in a trade or business when she incurred the expenses of traveling to New York and living there while her job lasted.[3] The Commissioner's proposed interpretation erects at the threshold of deductibility under section 162(a)(2) the requirement that a taxpayer be engaged in a trade or business *before* incurring a travel expense. Only if that requirement is satisfied would an inquiry into the deductibility of an expense proceed to ask whether the expense was a result of business exigencies, incurred while away from home, and reasonable and necessary.

Such a reading of the statute is semantically possible and would perhaps expedite the disposition of certain cases.[4] Nevertheless, we reject it as unsupported by case law and inappropriate to the policies behind section 162(a)(2).

The two cases relied on by the Commissioner do not appear to us to establish that traveling expenses are deductible only if incurred in connection with a preexisting trade or business. The seminal interpretation of section 162(a)(2), *Flowers v. Commissioner, supra*, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203, is as equivocal upon that point as the statutory language it construes. *Commissioner v. Janss*, 260 F.2d 99 (8th Cir. 1958), a case with facts somewhat akin to the present, did not articulate any such

---

**2.** *Flowers* denied a deduction claimed by the taxpayer as not involving expenses required by the taxpayer's *employer's* business. It is now established, however, that a taxpayer may be in the trade or business of being an employee. *See, e. g., Primuth v. Commissioner*, 54 T.C. 374, 377–78 (1970) (citing cases); Rev.Rul. 77–16, 1977–1 C.B. 37; Rev.Rul. 60–16, 1960–1 C.B. 58. Thus, expenses necessitated by the exigencies of an employee's occupation, without regard to the demands of the employer's business, are also deductible.

**3.** The taxpayer has not argued that being a law student constitutes a trade or business and so we do not address the issue. *See generally Reisinger v. Commissioner*, 71 T.C. 568 (1979); Rev.Rul. 68–591, 1968–2 C.B. 73.

**4.** We do not see, however, how it would affect the treatment of this case. The Commissioner apparently concedes that upon starting work in New York the taxpayer engaged in a trade or business. If we held—as we do not—that an expense is deductible only when incurred in connection with an already existing trade or business, our ruling would seem to invalidate merely the deduction of the cost of taxpayer's trip from Boston to New York to begin work (about $64). We would still need to determine, as in any other case under section 162(a)(2), whether the expenses that arose *subsequent* to the taxpayer's entry into her trade or business were reasonable and necessary, required by business exigencies and incurred while away from home.

theory. In *Janss,* a college student from Des Moines, Iowa, worked in Alaska during the summer between his freshman and sophomore years of school and sought to deduct from his taxable income the cost of transportation to and from Alaska as well as the cost of meals and lodging while there. Despite testimony from the personnel manager of the construction company for which Janss worked indicating that workers were available in Alaska and that Janss had been employed there largely as a personal favor, the Tax Court allowed the deduction. The Eighth Circuit reversed. It held, under *Flowers,* that Janss' travel to Alaska was not motivated by the exigencies of the employer's business. 260 F.2d at 104. The Eighth Circuit placed no emphasis on the fact that Janss had no previously existing trade or business.[5]

Nor would the Commissioner's theory mesh with the policy behind section 162(a)(2). As discussed, the travel expense deduction is intended to exclude from taxable income a necessary cost of producing that income. Yet the recency of entry into a trade or business does not indicate that travel expenses are not a cost of producing income. To be sure, the costs incurred by a taxpayer who leaves his usual residence to begin a trade or business at another location may not be truly *travel* expenses, *i. e.,* expenses incurred while "away from home," *see infra,* but practically, they are as much incurred "in the pursuit of a trade or business" when the occupation is new as when it is old.

An example drawn from the Commissioner's argument illustrates the point. The Commissioner notes that "if a construction worker, who normally works in Boston for Corp. A, travels to New York to work for Corp. B for six months, he is traveling . . . in the pursuit of his own trade as a construction worker." Accordingly, the requirement that travel expenses be a result of business exigencies is satisfied. Had a construction worker just entering the labor market followed the same course his expenses under the Commissioner's reasoning would not satisfy the business exigencies requirement.[6] Yet in each case, the taxpayer's travel expenses would be costs of earning an income and not merely incidents of personal lifestyle. Requiring that the finding of business exigency necessary to deductibility under section 162(a)(2) be predicated upon the prior existence of a trade or business would thus captiously restrict the meaning of "in pursuit of a trade or business."

Insofar as any cases bear on the issue, they seem to support this conclusion. In *United States v. LeBlanc,* 278 F.2d 571 (5th Cir. 1960), a justice of the Louisiana supreme court who resided in Napoleanville sought to deduct as a travel expense the cost of an apartment in New Orleans, where the court sat. Because Louisiana law required justices both to maintain a residence in their home districts and be present at court functions, the cost of the apartment was found to have been necessitated by business exigencies.[7] Such a result

---

5.  The bulk of the opinion is devoted to rejecting the argument that in cases of temporary employment the "business exigencies" requirement of *Flowers* need not be satisfied. 260 F.2d at 101–03. This argument is made by the taxpayer in the present case and we consider it *infra.*

6.  It could be argued that people enter the trade or business of "being employees," *see supra,* upon becoming available for employment rather than upon actually starting work. If correct, the two hypothetical situations would not necessarily produce different results. So interpreted, however, the Commissioner's argument would create an administrative nightmare. In every case in which the issue arose, the Commissioner and the courts would be presented

with the task of determining at just what point a person could be said to have actually entered his trade or business. Further, such a position might well imply that Mrs. Hantzis actually entered her trade or occupation while still in Boston, and not upon arriving at the offices of the New York firm.

7.  *Accord Emmert v. United States,* 146 F.Supp. 322 (S.D.Ind.1955) (Indiana supreme court judge); *Moss v. United States,* 145 F.Supp. 10 (W.D.S.C.1956) (public service commissioner). In cases where it was not shown that the law required maintaining two homes the deduction has been denied. *See Barnhill v. Commissioner,* 148 F.2d 913 (4th Cir. 1945); *Montgomery v. Commissioner,* 64 T.C. 175, 182 (1975), aff'd,

is inconsistent with the rule proposed by the Commissioner. The taxpayer in *LeBlanc* was not previously engaged in the trade or business which he began upon arriving in New Orleans. At least for the period of his first term on the court, therefore, the taxpayer's expenses in New Orleans were not incurred in connection with an already existing occupation and so, by the Commissioner's reasoning, should have been disallowed.[8] In another case, *Kroll v. Commissioner*, 49 T.C. 557 (1968), the court expressly found that the taxpayer, an eight-year-old actor, was not engaged in an already existing trade or business. Indeed, before coming to New York to begin acting, he "had never engaged in a trade or business." 49 T.C. at 558. That this fact might have been dispositive was never mentioned by the court, which noted that the expenses in question were incurred in connection with an ongoing trade or business, *id.*, at 561, and so went on to address the requirement that they have arisen while away from home.

In other contexts the phrase "in the pursuit of a trade or business" may permit the interpretation urged upon us by the Commissioner,[9] but to require under section 162(a)(2) that a travel expense be incurred in connection with a preexisting trade or business is neither necessary nor appropriate to effectuating the purpose behind the use of that phrase in the provision. Accordingly, we turn to the question whether, in the absence of the Commissioner's proposed threshold limit on deductibility, the expenses at issue here satisfy the requirements of section 162(a)(2) as interpreted in *Flowers v. Commissioner*.

### III.

■ As already noted, *Flowers* construed section 162(a)(2) to mean that a traveling expense is deductible only if it is (1) reasonable and necessary, (2) incurred while away from home, and (3) necessitated by the exigencies of business. Because the Commissioner does not suggest that Mrs. Hantzis' expenses were unreasonable or unnecessary, we may pass directly to the remaining requirements. Of these, we find dispositive the requirement that an expense be incurred while away from home. As we think Mrs. Hantzis' expenses were not so incurred, we hold the deduction to be improper.

The meaning of the term "home" in the travel expense provision is far from clear. When Congress enacted the travel expense deduction now codified as section 162(a)(2), it apparently was unsure whether, to be deductible, an expense must be incurred away from a person's residence or away from his principal place of business. *See* Note, *A House is not a Tax Home*, 49 Va.L.Rev. 125, 127–28 (1963). This ambiguity persists and courts, sometimes within a single circuit, have divided over the issue. *Compare Six v. United States*, 450 F.2d 66 (2d Cir. 1971) (home held to be residence) *and Rosenspan v. United States*, 438 F.2d 905 (2d Cir.), *cert. denied*, 404 U.S. 864, 92 S.Ct. 54, 30 L.Ed.2d 281 (1971) *and Burns v. Gray*, 287 F.2d 698 (6th Cir. 1961) *and Wallace v. Commissioner*, 144 F.2d 407 (9th Cir.

532 F.2d 1088 (6th Cir. 1976); *Lindsay v. Commissioner*, 34 B.T.A. 840 (1936).

**8.** The tax years at issue in *LeBlanc* were 1950 and 1951. The taxpayer began his tenure on the court in December 1949. 278 F.2d at 572. Thus, it could be argued that as of January 1, 1950 the taxpayer was engaged in a previously existing trade or business. This rationalization of the case exposes the weaknesses of the Commissioner's position. It is not clear to us why a month's prior employment would provide prima facie evidence of the business purpose behind the taxpayer's expenses. And if it did, the question would further arise how much previous work would constitute an already existing trade or business. A week? A day? A few hours on the train between Napoleanville and New Orleans? The difficulty in administering such a rule is obvious.

**9.** Under the general provision of section 162(a), no deduction is allowed for expenses incurred in preparing to enter a new business and the phrase "in the pursuit of a trade or business" has in cases concerned with such expenses been read to "presuppose [ ] an existing business with which [the taxpayer] is connected." *Frank v. Commissioner*, 20 T.C. 511, 513–14 (1953). *See, e. g., Weinstein v. United States*, 420 F.2d 700 (Ct.Cl.1970).

1944) *with Markey v. Commissioner*, 490 F.2d 1249 (6th Cir. 1974) (home held to be principal place of business) *and Curtis v. Commissioner*, 449 F.2d 225 (5th Cir. 1971) *and Wills v. Commissioner*, 411 F.2d 537 (9th Cir. 1969).[10] It has been suggested that these conflicting definitions are due to the enormous factual variety in the cases. *See Bell v. United States*, 591 F.2d 647, 649 (Ct.Cl.1979) ("We believe that much of the problem in differing definitions is the result of attempting to conceptualize the reasons for decisions which are based on widely varying factual situations."); *Brandl v. Commissioner*, 513 F.2d 697, 699 (6th Cir. 1975) ("Because of the almost infinite variety of the factual situations involved, the courts have not formulated a concrete definition of the term 'home' capable of universal application.") We find this observation instructive, for if the cases that discuss the meaning of the term "home" in section 162(a)(2) are interpreted on the basis of their unique facts as well as the fundamental purposes of the travel expense provision, and not simply pinioned to one of two competing definitions of home, much of the seeming confusion and contradiction on this issue disappears and a functional definition of the term emerges.

We begin by recognizing that the location of a person's home for purposes of section 162(a)(2) becomes problematic only when the person lives one place and works another. Where a taxpayer resides and works at a single location, he is always home, however defined; and where a taxpayer is constantly on the move due to his work, he is never "away" from home. (In the latter situation, it may be said either that he has no residence to be away from, or else that his residence is always at his place of employment. *See* Rev.Rul. 60–16, 1960–1 C.B. 58, 62.) However, in the present case, the need to determine "home" is plainly before us, since the taxpayer resided in Boston and worked, albeit briefly, in New York.

We think the critical step in defining "home" in these situations is to recognize that the "while away from home" requirement has to be construed in light of the further requirement that the expense be the result of business exigencies. The traveling expense deduction obviously is not intended to exclude from taxation every expense incurred by a taxpayer who, in the course of business, maintains two homes. Section 162(a)(2) seeks rather "to mitigate the burden of the taxpayer who, *because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." Kroll, supra*, 49 T.C. at 562 (emphasis added). *See Brandl, supra*, 513 F.2d at 699; *Daly, supra*, 72 T.C. at 195. Consciously or unconsciously, courts have effectuated this policy in part through their interpretation of the term "home" in section 162(a)(2). Whether it is held in a particular decision that a taxpayer's home is his residence or his principal place of business, the ultimate allowance or disallowance of a deduction is a function of the court's assessment of the reason for a taxpayer's maintenance of two homes. If the reason is perceived to be personal, the taxpayer's home will generally be held to be his place of employment rather than his residence and the deduction will be denied. *See, e. g., Markey, supra*, 490 F.2d at 1252–55; *Wills, supra*, 411 F.2d at 540–41; *Daly, supra*, 72 T.C. at 195–98; *Lindsay v. Commissioner, supra*, 34 B.T.A. at 843–44. If the reason is felt to be business exigencies, the person's home will usually be held to be his residence and the deduction will be allowed. *See, e. g., Frederick v. United States*, 603 F.2d 1292 (8th Cir. 1979); *Wright v. Hartsell*, 305 F.2d 221 (9th Cir. 1962); *Harvey v. Commissioner*, 283 F.2d 491 (9th Cir. 1960); *LeBlanc, supra*, 278 F.2d 571. We understand the concern of the concurrence that such an operational interpretation of the term "home" is somewhat technical and perhaps

---

**10.** The Tax Court has, with a notable exception, consistently held that a taxpayer's home is his place of business. *See Daly v. Commissioner*, 72 T.C. 190 (1979); *Foote v. Commissioner*, 67 T.C. 1 (1976); *Montgomery v. Commissioner*, 64 T.C. 175 (1975), *aff'd*, 532 F.2d 1088 (6th Cir. 1976); *Blatnick v. Commissioner*, 56 T.C. 1344 (1971). The exception, of course, is the present case.

untidy, in that it will not always afford bright line answers, but we doubt the ability of either the Commissioner or the courts to invent an unyielding formula that will make sense in all cases. The line between personal and business expenses winds through infinite factual permutations; effectuation of the travel expense provision requires that any principle of decision be flexible and sensitive to statutory policy.

Construing in the manner just described the requirement that an expense be incurred "while away from home," we do not believe this requirement was satisfied in this case. Mrs. Hantzis' *trade or business* did not require that she maintain a home in Boston as well as one in New York. Though she returned to Boston at various times during the period of her employment in New York, her visits were all for personal reasons. It is not contended that she had a business connection in Boston that necessitated her keeping a home there; no professional interest was served by maintenance of the Boston home—as would have been the case, for example, if Mrs. Hantzis

had been a lawyer based in Boston with a New York client whom she was temporarily serving. The home in Boston was kept up for reasons involving Mr. Hantzis, but those reasons cannot substitute for a showing by *Mrs.* Hantzis that the exigencies of *her* trade or business required *her* to maintain two homes.[11] Mrs. Hantzis' decision to keep two homes must be seen as a choice dictated by personal, albeit wholly reasonable, considerations and not a business or occupational necessity. We therefore hold that her home for purposes of section 162(a)(2) was New York and that the expenses at issue in this case were not incurred "while away from home." [12]

We are not dissuaded from this conclusion by the temporary nature of Mrs. Hantzis' employment in New York. Mrs. Hantzis argues that the brevity of her stay in New York excepts her from the business exigencies requirement of section 162(a)(2) under a doctrine supposedly enunciated by the Supreme Court in *Peurifoy v. Commissioner*, 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed.2d 30 (1958) (per curiam).[13] The Tax Court

---

**11.** In this respect, Mr. and Mrs. Hantzis' situation is analogous to cases involving spouses with careers in different locations. Each must independently satisfy the requirement that deductions taken for travel expenses incurred in the pursuit of a trade or business arise while he or she is away from home. *See Chwalow v. Commissioner*, 470 F.2d 475, 477–78 (3d Cir. 1972) ("Where additional expenses are incurred because, for personal reasons, husband and wife maintain separate domiciles, no deduction is allowed."); *Hammond v. Commissioner*, 213 F.2d 43, 44 (5th Cir. 1954); *Foote v. Commissioner*, 67 T.C. 1 (1976); *Coerver v. Commissioner*, 36 T.C. 252 (1961). This is true even though the spouses file a joint return. *Chwalow, supra,* 470 F.2d at 478.

**12.** The concurrence reaches the same result on essentially the same reasoning, but under what we take to be an interpretation of the "in pursuit of business" requirement. We differ from our colleague, it would seem, only on the question of which precondition to deductibility best accommodates the statutory concern for " 'the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses.' " *See supra.* Neither the phrase "away from home" nor "in pursuit of business" effectuates this concern without interpretation that to some degree removes it

from "the ordinary meaning of the term." (Keeton, J., concurring). However, of the two approaches, we find that of the concurrence more problematic than that adopted here.

**13.** In *Peurifoy*, the Court stated that the Tax Court had "engrafted an exception" onto the requirement that travel expenses be dictated by business exigencies, allowing "a deduction for expenditures . . . when the taxpayer's employment is 'temporary' as contrasted with 'indefinite' or 'indeterminate.' " 358 U.S. at 59, 79 S.Ct. at 104. Because the Commissioner did not challenge this exception, the Court did not rule on its validity. It instead upheld the circuit court's reversal of the Tax Court and disallowance of the deduction on the basis of the adequacy of the appellate court's review. The Supreme Court agreed that the Tax Court's finding as to the temporary nature of taxpayer's employment was clearly erroneous. *Id.* at 60–61, 79 S.Ct. at 105.

Despite its inauspicious beginning, the exception has come to be generally accepted. Some uncertainty lingers, however, over whether the exception properly applies to the "business exigencies" or the "away from home" requirement. *Compare Brandl, supra,* 513 F.2d at 699 *and Blatnick v. Commissioner*, 56 T.C. 1344, 1348 (1971) *with Frederick, supra,* 603 F.2d at 1294. In fact, it is probably relevant to both.

here held that Boston was the taxpayer's home because it would have been unreasonable for her to move her residence to New York for only ten weeks. At first glance these contentions may seem to find support in the court decisions holding that, when a taxpayer works for a limited time away from his usual home, section 162(a)(2) allows a deduction for the expense of maintaining a second home so long as the employment is "temporary" and not "indefinite" or "permanent." *See, e. g., Frederick, supra,* 603 F.2d at 1294; *Six, supra,* 450 F.2d at 69; *Wright, supra,* 304 F.2d at 224–25; *Coburn v. Commissioner,* 138 F.2d 763, 764–65 (2d Cir. 1943). This test is an elaboration of the requirements under section 162(a)(2) that an expense be incurred due to business exigencies and while away from home. *See* note 12, *supra.* Thus it has been said,

> "Where a taxpayer reasonably expects to be employed in a location for a substantial or indefinite period of time, the reasonable inference is that his choice of a residence is a personal decision, unrelated to any business necessity. Thus, it is irrelevant how far he travels to work. The normal expectation, however, is that the taxpayer will choose to live near his place of employment. Consequently, when a taxpayer reasonable [sic] expects to be employed in a location for only a short or temporary period of time and travels a considerable distance to the location from his residence, it is unreasonable to assume that his choice of a residence is dictated by personal convenience. The reasonable inference is that he is temporarily making these travels because of a business necessity."

*Frederick, supra,* 603 F.2d at 1294–95 (citations omitted).

■ The temporary employment doctrine does not, however, purport to eliminate any requirement that continued maintenance of a first home have a business justification. We think the rule has no application where the taxpayer has no business connection with his usual place of residence. If no business exigency dictates the location of the taxpayer's usual residence, then the mere fact of his taking temporary employment elsewhere cannot supply a compelling business reason for continuing to maintain that residence. Only a taxpayer who lives one place, works another and has business ties to *both* is in the ambiguous situation that the temporary employment doctrine is designed to resolve. In such circumstances, unless his employment away from his usual home is temporary, a court can reasonably assume that the taxpayer has abandoned his business ties to that location and is left with only personal reasons for maintaining a residence there. Where only personal needs require that a travel expense be incurred, however, a taxpayer's home is defined so as to leave the expense subject to taxation. *See supra.* Thus, a taxpayer who pursues temporary employment away from the location of his usual residence, but has no business connection with that location, is not "away from home" for purposes of section 162(a)(2). *See Cockrell v. Commissioner,* 321 F.2d 504, 507 (8th Cir. 1963); *Tucker v. Commissioner,* 55 T.C. 783, 786–88 (1971).

On this reasoning, the temporary nature of Mrs. Hantzis' employment in New York does not affect the outcome of her case. She had no business ties to Boston that would bring her within the temporary employment doctrine. By this holding, we do not adopt a rule that "home" in section 162(a)(2) is the equivalent of a taxpayer's place of business. Nor do we mean to imply that a taxpayer has a "home" for tax purposes only if he is already engaged in a trade or business at a particular location. Though both rules are alluringly determinate, we have already discussed why they offer inadequate expressions of the purposes behind the travel expense deduction. We hold merely that for a taxpayer in Mrs.

---

*See Six, supra,* 450 F.2d at 69 n.1; Note, *supra,* 49 Va.L.Rev. at 136–45.

Because we treat these requirements as inextricably intertwined, *see supra,* we find it unnecessary to address this question: applied to either requirement, the temporary employment doctrine affects the meaning of both.

Hantzis' circumstances to be "away from home in the pursuit of a trade or business," she must establish the existence of some sort of business relation both to the location she claims as "home" and to the location of her temporary employment sufficient to support a finding that her duplicative expenses are necessitated by business exigencies. This, we believe, is the meaning of the statement in *Flowers* that "[b]usiness trips are to be identified *in relation to* business demands and the traveler's business headquarters." 326 U.S. at 474, 66 S.Ct. at 254 (emphasis added). On the uncontested facts before us, Mrs. Hantzis had no business relation to Boston; we therefore leave to cases in which the issue is squarely presented the task of elaborating what relation to a place is required under section 162(a)(2) for duplicative living expenses to be deductible.

*Reversed.*

KEETON, District Judge, concurring in the result.

Although I agree with the result reached in the court's opinion, and with much of its underlying analysis, I write separately because I cannot join in the court's determination that New York was the taxpayer's home for purposes of 26 U.S.C. § 162(a)(2). In so holding, the court adopts a definition of "home" that differs from the ordinary meaning of the term and therefore unduly risks causing confusion and misinterpretation of the important principle articulated in this case.

In adopting section 162(a)(2), Congress sought "to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." *Kroll v. Commissioner*, 49 T.C. 557, 562 (1962). *See Rosenspan v. United States*, 438 F.2d 905, 912 (2d Cir.), *cert. denied*, 404 U.S. 864, 92 S.Ct. 54, 30 L.Ed.2d 108 (1971); *James v. United States*, 308 F.2d 204, 206–07 (9th Cir. 1962). In the present case, the taxpayer does not contend that she maintained her residence in Boston for business reasons. Before working in New York, she had attended school near her home in Boston, and she continued to do so after she finished her summer job. In addition, her husband lived and worked in Boston. Thus, on the facts in this case, I am in agreement with the court that the taxpayer's deductions must be disallowed because she was not required by her trade or business to maintain both places of residence. However rather than resting its conclusion on an interpretation of the language of section 162(a)(2) taken as a whole, which allows a deduction for ordinary and necessary expenses incurred "while away from home in the pursuit of trade or business," the court reaches the same result by incorporating the concept of business-related residence into the definition of "home," thereby producing sometimes, but not always, a meaning of "home" quite different from ordinary usage.

The Supreme Court has noted that "[t]he meaning of the word 'home' in [the predecessor of § 162(a)(2)] with reference to a taxpayer residing in one city and working in another has engendered much difficulty and litigation." *Commissioner v. Flowers*, 326 U.S. 465, 471, 66 S.Ct. 250, 253, 90 L.Ed. 203 (1946). The Court has twice rejected opportunities to adopt definitive constructions of the term. *Flowers, supra*, 326 U.S. at 472, 66 S.Ct. at 253. *Commissioner v. Stidger*, 386 U.S. 287, 292, 87 S.Ct. 1065, 1068, 17 L.Ed.2d 51 (1967). *See also Peurifoy v. Commissioner*, 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed.2d 30 (1958). Moreover, as the court's opinion in the present case points out, the courts of appeals have split on whether a taxpayer's "home" is her (or his) principal residence or principal place of business. *See* cases cited at p. 253, ante.

The court enters this conflict among circuits with a "functional" definition of home not yet adopted by any other circuit. I read the opinion as indicating that in a dual residence case, the Commissioner must determine whether the exigencies of the taxpayer's trade or business require her to maintain both residences. *See* pp. 253–255 *ante*. If so, the Commissioner must decide that the taxpayer's *principal resi-*

*dence* is her "home" and must conclude that expenses associated with the secondary residence were incurred "while away from home," and are deductible. If not, as in the instant case, the Commissioner must find that the taxpayer's *principal place of business* is her "home" and must conclude that the expenses in question were not incurred "while away from home." The conclusory nature of these determinations as to which residence is her "home" reveals the potentially confusing effect of adopting an extraordinary definition of "home."

A word used in a statute can mean, among the cognoscenti, whatever authoritative sources define it to mean. Nevertheless, it is a distinct disadvantage of a body of law that it can be understood only by those who are expert in its terminology. Moreover, needless risks of misunderstanding and confusion arise, not only among members of the public but also among professionals who must interpret and apply a statute in their day-to-day work, when a word is given an extraordinary meaning that is contrary to its everyday usage.

The result reached by the court can easily be expressed while also giving "home" its ordinary meaning, and neither Congress nor the Supreme Court has directed that "home" be given an extraordinary meaning in the present context. *See Flowers, supra, Stidger, supra,* and *Peurifoy, supra.* In *Rosenspan v. United States, supra,* Judge Friendly, writing for the court, rejected the Commissioner's proposed definition of home as the taxpayer's business headquarters, concluding that in section 162(a)(2) " 'home' means 'home.' " *Id.* at 912.

> When Congress uses a non-technical word in a tax statute, presumably it wants administrators and courts to read it in the way that ordinary people would understand, and not "to draw on some unexpressed spirit outside the bounds of the normal meaning of words." *Addison v. Holly Hill Fruit Prods., Inc.,* 322 U.S. 607, 617, 64 S.Ct. 1215, 1221, 88 L.Ed. 1488 (1944).

*Id.* at 911. *Cf. United States v. New England Coal and Coke Co.,* 318 F.2d 138, 142 (1st Cir. 1963) ("Unless the contrary appears, it is presumed that statutory words were used in their ordinary sense").

In analyzing dual residence cases, the court's opinion advances compelling reasons that the first step must be to determine whether the taxpayer has business as opposed to purely personal reasons for maintaining both residences. This must be done in order to determine whether the expenses of maintaining a second residence were, "necessitated by business, as opposed to personal, demands," p. 250 *ante,* and were in this sense incurred by the taxpayer "while away from home in pursuit of trade or business." Necessarily implicit in this proposition is a more limited corollary that is sufficient to decide the present case: When the taxpayer has a business relationship to only one location, no traveling expenses the taxpayer incurs are "necessitated by business, as opposed to personal demands," regardless of how many residences the taxpayer has, where they are located, or which one is "home."

In the present case, although the taxpayer argues that her employment required her to reside in New York, that contention is insufficient to compel a determination that it was the nature of her trade or business that required her to incur the additional expense of maintaining a second residence, the burden that section 162(a)(2) was intended to mitigate. Her expenses associated with maintaining her New York residence arose from personal interests that led her to maintain two residences rather than a single residence close to her work.[1] While traveling from her principal residence to a second place of residence closer to her business, even though "away from home," she was not "away from home in pursuit of business." Thus, the expenses at issue in this case were not incurred by the taxpayer "while away from home in pursuit of trade or business."

---

1. For reasons explained by the court, pp. 254–256, *ante,* the temporary nature of her employment does not bring the case within those as to which Congress was mitigating the burden of duplicative expenses when enacting section 162(a)(2).

In the contrasting case in which a taxpayer has established that both residences were maintained for business reasons, section 162(a)(2) allows the deduction of expenses associated with travel to, and maintenance of, one of the residences if they are incurred for business reasons *and that abode is not the taxpayer's home.* A common sense meaning of "home" works well to achieve the purpose of this provision.

In summary, the court announces a sound principle that, in dual residence cases, deductibility of traveling expenses depends upon a showing that both residences were maintained for business reasons. If that principle is understood to be derived from the language of section 162(a)(2) taken as a whole, "home" retains operative significance for determining *which* of the business-related residences is the one the expense of which can be treated as deductible. In this context, "home" should be given its ordinary meaning to allow a deduction only for expenses relating to an abode that is not the taxpayer's principal place of residence. On the undisputed facts in this case, the Tax Court found that Boston was the taxpayer's "home" in the everyday sense, *i. e.,* her principal place of residence. Were the issue relevant to disposition of the case, I would uphold the Tax Court's quite reasonable determination on the evidence before it. However, because the taxpayer had no business reason for maintaining both residences, her deduction for expenses associated with maintaining a second residence closer than her principal residence to her place of employment must be disallowed without regard to which of her two residences was her "home" under section 162(a)(2).