**Michael M. SZLOCH, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**Civ. A. No. 80–442–K.**

United States District Court,
D. Massachusetts.

Dec. 21, 1982.

Francis C. Lynch, Palmer & Dodge, Christopher W. Angius, Boston, Mass., for plaintiff.

James M. Shaker, Tax Div., Dept. of Justice, Washington, D.C., Gregory Flynn, Asst. U.S. Atty., Boston, Mass., for U.S.

Memorandum

KEETON, District Judge.

I.

Plaintiff Michael Szloch is suing the United States to recover a federal income

tax deficiency assessed against him and his wife for the 1977 taxable year. Plaintiff's 1977 income tax return was audited by the Internal Revenue Service and, as a result of the audit, the Service assessed a deficiency of $3,253 against him. He paid that deficiency in late 1978, and in 1979 filed an amended tax return for 1977 in which he requested a refund of $3,070.85. It is that refund, disallowed by the Service, that is at issue here.

Plaintiff claims that he was required by the demands of his profession to maintain two residences in 1977, one in the Boston area and the other in Connecticut, and that his travel to and from Connecticut and his meals and lodging while in Connecticut are deductible business expenses under Section 162(a)(2) of the Internal Revenue Code.[1]

The United States argues, *inter alia,* that plaintiff's expenses are not properly seen as incurred in the pursuit of a trade or business or as incurred away from home, and are not therefore deductible. Currently before the court is defendant's motion for summary judgment.

## II.

In order for the United States to prevail on its summary judgment motion, it must show that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. Rule 56(c), Fed.R.Civ.Pro. In considering the motion for summary judgment, the court must view the record "in the light most favorable to ... the party opposing the motion ...." *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). *See Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). In a case like this, where fairly extensive discovery has occurred and the court has before it depositions and affidavits submitted in support of and in opposi-

tion to the motion for summary judgment, summary judgment should be granted only if it is clear that the evidence is such that the factfinder at trial could not, with support in the evidence, find for the plaintiff.

## III.

The facts as established by the evidence and construed most favorably to the plaintiff are as follows. Plaintiff is a sixty year old engineer who has maintained his family residence in Stoneham, Massachusetts from 1954 to the present. From 1957, when he graduated from Northeastern University, until 1974, when he lost his job with the firm J.J. Main, Inc., he was employed as an engineer with a number of Boston area engineering firms and "developed ... expertise in the areas of civil structural industrial and power plant design." Pl.Aff. at 1–2. Following his termination from C.T. Main, plaintiff had difficulty finding work in the Boston area "because of the recession and the turn away from nuclear power plants ...," *id.* at 2. He began to look for work outside Boston, hoping to be able to return to work in the Boston area when conditions improved. He took a job with Peabody Engineering Systems in Stamford, Connecticut that lasted 15 months. His next job, which began in July, 1976, was with the firm of Burns & Roe. He was employed by Burns & Roe throughout 1977, the year at issue in this case, in their Stamford, Connecticut office. He was assigned to work on a specific project—the design and engineering of a coal-fired power plant (Cajun Project)—that was expected to last about a year and one half. During 1977 plaintiff maintained his Stoneham residence, although he resided during the week in Connecticut and drove to Stoneham to spend weekends with his family:

> Because at this time it would still have been difficult for me to find work in Boston, I decided to accept the position with Burns & Roe but, for the time that

1. This section authorizes a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including ... traveling expenses (including amounts expended for meals or lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business ...."

work continued on the Cajun project, to live in Stamford during the week and return to Stoneham on weekends. When the Cajun project was completed, I would then once again look for a permanent position in the Boston area unless, of course, the prospects of continued employment by Burns & Roe appeared more attractive. While I worked in Stamford, I resided first at the Y.M.C.A., and later rented rooms in private homes.

Pl.Aff. at 3.

Following completion of the Cajun Project work, plaintiff was offered another position with Burns & Roe in Florida. He made the decision then to relocate himself and his family to Florida, and he put his Stoneham home up for sale. Before he reported to the new job, however, the offer was withdrawn and plaintiff found himself without employment. He has lived in Stoneham since that time and is currently "endeavoring to build a consulting engineering practice in the Boston area." Pl. Aff. at 6.

## IV.

■ Situations like the present, where a taxpayer maintains two residences and attempts to deduct as business expenses some or all of his travel, meal and lodging costs, have generated a considerable amount of caselaw. The leading case, of course, is *Commissioner of Internal Revenue v. Flowers*, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1945), where the Court denied the deduction to an individual who maintained one home in Mississippi and another where he worked in Alabama. The Court established three criteria that must be satisfied before the travel and related expense deductions can be taken:

(1) The expense must be a reasonable and necessary traveling expense, as that term is generally understood. This includes such items as transportation fares and food and lodging expense incurred while traveling.

(2) The expense must be incurred "while away from home."

(3) The expense must be incurred in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer. Moreover, such an expenditure must be necessary or appropriate to the development and pursuit of the business or trade.

*Flowers* at 470, 66 S.Ct. at 252.

The first of these criteria—whether the expense is reasonable and necessary—is not at issue in this case. Whether the expense was incurred away from home in pursuit of business is at issue. The First Circuit recently considered this issue in *Hantzis v. Commissioner of Internal Revenue*, 638 F.2d 248 (1st Cir.1981). The court there denied a deduction for transportation and living expenses to a taxpayer who maintained her Boston residence while she worked during the summer in New York. The court determined that to deduct as a business expense the costs associated with one residence, the taxpayer must have a business reason, as opposed to a personal reason, for maintaining both residences. The court said:

We think the critical step in defining "home" in these situations is to recognize that the "while away from home" requirement has to be construed in light of the further requirement that the expense be the result of business exigencies. The traveling expense deduction obviously is not intended to exclude from taxation every expense incurred by a taxpayer who, in the course of business, maintains two homes. Section 162(a)(2) seeks rather "to mitigate the burden of the taxpayer who, *because of the exigencies of his trade or business, must* maintain two places of abode and thereby incurs additional and duplicate living expenses. . . .

*Id.* at 253 (emphasis in original).

The question that must be answered in this case, then, is whether plaintiff had business as opposed to purely personal reasons for maintaining two residences in 1977. Plaintiff recognizes this as the central question and argues that whether he was re-

quired by business exigencies to maintain both residences "is sharply disputed" and therefore the action "is inappropriate for summary judgment." Pl.Mem. at 1–2. Plaintiff, however, does not define with any clarity the business exigencies that required him to maintain his Stoneham residence in 1977. Plaintiff's affidavit, prepared in order to aid the court in deciding this summary judgment motion, says only that plaintiff, when he originally looked for work outside Boston, hoped that the job market in Boston would improve and that he "would soon be able to return to Boston with more experience and favorable recommendations when the Boston job market had recovered." Pl.Aff. at 2. When plaintiff took the job with Burns & Roe, he also expected to return to Boston: "When the Cajun project was completed, I would then once again look for a permanent position in the Boston area unless, of course, the prospects of continued employment by Burns & Roe appeared more attractive." Pl.Aff. at 3.[2] As stated in his memorandum, plaintiff's argument is that "Mr. Szloch's profession as an engineer required him in 1977 to maintain both his family home in Stoneham and temporary quarters in Stamford. Mr. Szloch had built a career as an engineer in the Boston area over a substantial period of time ... and he would reasonably believe that his professional interest was best served by pursuing his career in Boston." Pl.Mem. at 6–7.

The problem with this argument is that, even accepting as true the perfectly reasonable assertions that plaintiff had built a career in the Boston area and assumed that he would soon return to Boston to pursue his career, plaintiff has not identified a business purpose that required him to maintain his Stoneham residence while he was employed in Connecticut. There is no argument, for instance, that he was required to return regularly to Boston in order to consult with a client or work on a project. His reason for returning each week to Boston appears to be personal: "[t]hroughout 1977 I lived in Stamford during the week and drove home *to spend weekends with my family in Stoneham*." Pl.Aff. at 4 (emphasis added). The words of *Hantzis* are instructive in the present case:

Mrs. Hantzis' *trade or business* did not require that she maintain a home in Boston as well as one in New York. Though she returned to Boston at various times during the period of her employment in New York, her visits were all for personal reasons. It is not contended that she had a business connection in Boston that necessitated her keeping a home there; no professional interest was served by maintenance of the Boston home—as would have been the case, for example, if Mrs. Hantzis had been a lawyer based in Boston with a New York client whom she was temporarily serving. The home in Boston was kept up for reasons involving Mr. Hantzis, but those reasons cannot substitute for a showing by *Mrs.* Hantzis that the exigencies of *her* trade or business required *her* to maintain two homes. Mrs. Hantzis' decision to keep two homes must be seen as a choice dictated by personal, albeit wholly reasonable, considerations and not a business or occupational necessity.

*Hantzis* at 254.

Mr. Szloch, like Mrs. Hantzis, no doubt had very good reasons for maintaining his original Boston area residence; but the record does not suggest that these were business reasons,[3] and therefore the defendant's

---

**2.** See also plaintiff's answer to defendant's Interrogatory No. 5. "The reasons for [maintaining two residences] were the uncertainty of the duration of my assignment at Burns and Roe, Inc. and my expectation of returning to business pursuits in the Boston area if my assignment at Burns and Roe, Inc. did not become permanent."

**3.** The contested facts that Mr. Szloch's employment in Connecticut was temporary and that

he expected to return to Boston in the near future, even if accepted as true, in no way change the result here, since "[t]he temporary employment doctrine does not ... purport to eliminate any requirement that continued maintenance of a first home have a business justification." *Hantzis* at 255. Whether his employment in Connecticut is seen as temporary or not, plaintiff still has to show a business reason for maintaining the Stoneham home in 1977.

motion for summary judgment must be granted.