**Edward W. and Leona J. ANDREWS, Petitioners, Appellants,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent, Appellee.**

**No. 90–2165.**

United States Court of Appeals, First Circuit.

Submitted March 25, 1991.

Decided April 24, 1991.

---

Raymond A. Snow and Paul J. Molloy, on brief, Somerville, Mass., for petitioners, appellants.

Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, Richard Farber and Christine A. Grant, Tax Div., Dept. of Justice, on brief, for respondent, appellee.

Before CAMPBELL, SELYA and CYR, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Edward W. Andrews and his wife, Leona J. Andrews,[1] brought this action in the Tax Court for a redetermination of an income tax deficiency that the Commissioner had assessed for the tax year 1984. At issue is Andrews' deduction of travel expenses, including meals and costs associated with maintaining a second home at Lighthouse Point, Florida, as "traveling expenses ... while away from home in the pursuit of a trade or business."[2] Internal Revenue Code of 1954, 26 U.S.C. § 162(a)(2).[3] Per-

---

**1.** Leona Andrews is a party to this action solely because she filed a joint tax return with her husband; the taxpayer, or "Andrews," for all purposes herein refers to Edward Andrews.

**2.** Andrews does not appeal from the Tax Court's resolution of other disputed deductions on his 1984 return which are unrelated to the travel expense issue.

**3.** As the tax year at issue, 1984, is prior to the Tax Reform Act of 1986, references herein, unless otherwise noted, are to the Internal Reve-

sonal living expenses are generally not deductible. 26 U.S.C. § 262. The Tax Court sustained the Commissioner's disallowance of the deduction on the grounds that Andrews was not "away from home" when these expenses were incurred. *Andrews v. Commissioner*, 60 T.C.M. (CCH) 277, T.C. Memo 1990–391. Andrews appeals to this court pursuant to 26 U.S.C. § 7482.

## Background

We summarize the Tax Court's findings only to the extent helpful in understanding this decision. Andrews was president and chief executive officer of Andrews Gunite Co., Inc. ("Andrews Gunite"), which is engaged in the swimming pool construction business in New England, a seasonal business. His salary in 1984 was $108,000. Beginning in 1964, during the off-season, Andrews, establishing a sole proprietorship known as Andrews Farms, began to race and breed horses in New England, and in 1972 moved his horse business to Pompano, Florida. Andrews' horse business proliferated and prospered.

In 1974, Andrews Gunite diversified by establishing a Florida-based division, known as Pilgrim Farms, to acquire horses to breed with two of Andrews Farms' most successful horses and to develop a racing stable similar to Andrews Farms. By 1975, Andrews Farms had 130 horses, and by 1984 Pilgrim Farms had twenty to thirty horses. Andrews was responsible, in 1984, for managing and training Pilgrim Farms horses and Andrews Farms horses, though he was compensated for his services to Pilgrim Farms only by payment of his airfare to Florida. While in Florida during racing season, Andrews worked at the racetrack from seven in the morning until noon, and he returned to the track to solicit sales of his horses and watch the races on four nights per week.

Also, in 1983, Andrews' son, who had worked for Andrews Gunite, sought to establish a pool construction business in Flor-

ida. Andrews, along with his brother and son, formed a corporation, originally known as East Coast Pools by Andrews, Inc. and renamed Pools by Andrews, Inc., to purchase the assets of a troubled pool business in Florida. Andrews owned one-third of Pools by Andrews, Inc. in 1984. Andrews assisted his son in the Florida pool business, but drew no salary for his services. By the time of trial, this pool business was one of the biggest, if not the biggest builder of pools in Florida, with offices in West Palm Beach and Orlando and plans for a third office in Tampa.

Andrews resided in Lynnfield, Massachusetts with his wife prior to and during 1984. During this period, the expansion of the horse business required Andrews to make an increasing number of trips to Florida. In order to reduce travel costs and facilitate lodging arrangements, Andrews purchased a condominium in Pompano Beach, Florida in 1976, which he used as a residence when in Florida during the racing season. The neighborhood around the condominium became unsafe, and Andrews decided to move, purchasing a single family home with a swimming pool in Lighthouse Point, Florida in 1983. The home was closer than the condominium to the Pompano Beach Raceway, where Andrews maintained, trained, and raced many of the Andrews Farms and Pilgrim Farms horses. Andrews used the Florida house as his personal residence during the racing season.

The Tax Court concluded that in 1984 Andrews worked in Florida primarily in his horse business for six months, from January through April and during November and December, and that Andrews worked primarily in his pool construction business in Massachusetts for six months, from May to October. On his 1984 amended return, Andrews claimed one hundred percent business usage on his Florida house, and claimed depreciation deductions on the fur-

nue Code of 1954, applicable at that time. Section 162(a)(2) provides as follows:

**(a) In general.**—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

**(2)** traveling expenses ... while away from home in the pursuit of a trade or business.

niture and house in connection with his horse racing business. He also characterized tax, mortgage interest,[4] utilities, insurance, and other miscellaneous expenses as "lodging expenses," which he deducted in connection with the Florida pools and horse racing businesses, along with expenses for meals while he was in Florida.[5]

### Discussion

The Tax Court correctly stated: "The purpose of the section 162(a)(2) deduction is to mitigate the burden upon a taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional living expenses." *See Hantzis v. Commissioner*, 638 F.2d 248, 256 (1st Cir.), *cert. denied*, 452 U.S. 962, 101 S.Ct. 3112, 69 L.Ed.2d 973 (1981); *Dilley v. Commissioner*, 58 T.C. 276 (1972); *Kroll v. Commissioner*, 49 T.C. 557, 562 (1962). The Tax Court then stated its general rule that "a taxpayer's home for purposes of section 162(a) is the area or vicinity of his principal place of business." Responding thereafter to the Commissioner's contention that during the horse racing

season Florida was Andrews' "tax home," rendering Andrews' Florida meals and lodging expenses personal and nondeductible living expenses under sections 262 and 162(a)(2), the Tax Court concluded that Andrews had two "tax homes" in 1984. The Tax Court, without further elaboration, based its decision on an observation that Andrews' business in Florida between January and mid-April and during November and December of each year was recurrent with each season, rather than temporary.

On appeal, the Commissioner who, while maintaining its ongoing position that the taxpayer's home for purposes of section 162(a)(2) is his principal place of business and that Andrews' principal place of business was in Florida, agrees with Andrews that the Tax Court erred in finding that he had more than one tax home and urges that we remand for the Tax Court to determine the location of Andrews' principal place of business. For the reasons that follow, we hold that the Tax Court erred in determining that Andrews had two "tax homes" in this case.[6]

**4.** The Commissioner conceded in the Tax Court that real estate taxes and mortgage interest expenses on the Lighthouse Point, Florida house were independently deductible under 26 U.S.C. §§ 163-64, to the extent they were substantiated. The deductibility of these expenses is therefore not at issue in this appeal.

**5.** Andrews has no records to substantiate the claimed meals expenses, which he calculated by multiplying $28.40/day by the 140 days he claimed he was in Florida on business. The Tax Court found that, even if it had concluded that Andrews was away from home during his six months in Florida, it would still sustain the Commissioner's disallowance of the meals deduction because Andrews failed to comply with the substantiation requirements of 26 U.S.C. § 274(d).

Andrews does not contest the Tax Court's finding that the meals expenses were unsubstantiated and therefore non-deductible at the claimed $28.40/day rate. Nevertheless, he contends that he is entitled to a deduction for unsubstantiated meals expenses in the amount of $9.00 per day pursuant to Rev.Proc. 83–71, 1983–2 C.B. 590, for what he now contends totalled two hundred days away from Massachusetts conducting business in 1984. The Commissioner agrees that Andrews would be entitled to deduction of $9.00 per day for meals expenses if he was "away from home" while in Florida in pursuit of business, though the Com-

missioner contends Andrews was not "away from home" while in Florida.

We need not address this issue on appeal. As discussed below, the Tax Court determined that Andrews was not entitled to business travel deductions under section 162(a)(2) for living expenses incurred in Florida, and did not reach the question of what unsubstantiated meals expenses may be deducted had it found Andrews was entitled to any section 162(a)(2) deductions.

**6.** The Tax Court also determined that 26 U.S.C. § 280A(a) (which provides that no deduction is generally allowable "with respect to the use of a dwelling unit used by the taxpayer during the taxable year as his residence"), would prohibit allowance of Andrews' deduction for his Florida home lodging expenses. We agree, however, with both Andrews and the Commissioner that the Tax Court erred by ignoring the effect of section 280A(f)(4), which states:

**(4) Coordination with section 162(a)(2).—** Nothing in this section shall be construed to disallow any deduction allowable under section 162(a)(2) (or any deduction which meets the tests of section 162(a)(2) but is allowable under another provision of this title) by reason of the taxpayer's being away from home in the pursuit of a trade or business (other than the trade or business of renting dwelling units).

Also, as the Commissioner correctly points out in his brief, the Congressional floor debates

As we have previously stated, section 162 provides a category of deductible business expenses which reflects "a fundamental principle of taxation: that a person's taxable income should not include the cost of producing that income." *Hantzis*, 638 F.2d at 249. A specific example of a deductible cost of producing income is section 162(a)(2) travel expenses. *Id.* The Supreme Court first construed the meaning of the travel expense deduction provision[7] in *Commissioner v. Flowers*, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946). In *Flowers*, the Court construed this provision to mean that travel expenses are deductible only if: (1) "reasonable and necessary"; (2) "incurred 'while away from home'"; and (3) incurred "in pursuit of business." *Id.* at 470, 66 S.Ct. at 252.

The issue of the reasonableness or necessity of Andrews' Florida expenses is not presented in this appeal. Rather, the Tax Court based its decision on a holding that Andrews did not satisfy the second *Flowers* requirement for deduction of his Florida expenses; as the Tax Court determined Andrews' home in 1984 was in both Massachusetts and Florida, he was not away from home when these expenses were incurred. We turn, then, to interpret the meaning of the "away from home" language of section 162(a)(2). The question here is whether, within the meaning of "home" in section 162(a)(2), Andrews could have had two homes in 1984.

The Supreme Court, in *Flowers*, noted: "The meaning of the word 'home' in [the travel expense deduction provision] with reference to a taxpayer residing in one city and working in another has engendered much difficulty and litigation." *Id.* at 471, 66 S.Ct. at 253; *see also Commissioner v. Stidger*, 386 U.S. 287, 292, 87 S.Ct. 1065, 1068, 18 L.Ed.2d 53 (1967). The Internal Revenue Service has consistently taken the position that a taxpayer's home for purposes of section 162(a) is the area or vicinity of his principal place of employment. Rev.Rul. 75–432, 1975–2 C.B. 60; Rev.Rul. 63–82, 1963–1 C.B. 33; Rev.Rul. 61–67, 1961–1 C.B. 25. The Tax Court in this case acknowledged the general validity of that rule, as have a number of courts of appeals. *See, e.g., Coombs v. Commissioner*, 608 F.2d 1269, 1275 (9th Cir.1979); *Markey v. Commissioner*, 490 F.2d 1249, 1255 (6th Cir.1974). Judge Friendly, writing for the Second Circuit, however, reasoned that Congress intended that "home" should be accorded its natural non-technical ordinary meaning of primary residence in a tax statute. *Rosenspan v. United States*, 438 F.2d 905, 911 (2d Cir.), *cert. denied*, 404 U.S. 864, 92 S.Ct. 54, 30 L.Ed.2d 108 (1971).

■■■ This court, in *Hantzis*, after reviewing cases addressing this issue, declined in that case to focus upon the "principal place of business" or "primary residence" definitions of "home," and suggested a "functional definition of the term," 638 F.2d at 253. Effectuation of the travel expense provision must be guided by the policy underlying the provision that costs necessary to producing income may be deducted from taxable income. *Id.* at 251. Where business necessity requires that a taxpayer maintain two places of abode, and thereby incur additional and duplicate living expenses, such duplicate expenses are a cost of producing income and should ordinarily be deductible. We believe it continues to be the case that, "[w]hether it is held in a particular decision that a taxpayer's home is his residence or his principal place of business, the ultimate allowance or disallowance of a deduction is a function of the court's assessment of the reason for a taxpayer's maintenance of two homes." *Id.* "The exigencies of business rather than the personal conveniences and necessi-

---

pertaining to the enactment of section 280A(f)(4) indicate that, in appropriate circumstances, expenses incurred in connection with ownership of a home could qualify as deductible business lodging expenses. *See* 127 Cong. Rec. 31968 (Dec. 16, 1981) ("Finally, this provision will clarify that the personal use rules of section 280A will not be construed to deny otherwise allowable business expenses for travel

away from home.") (statement of Sen. Dole); *see also* 127 Cong.Rec. 3159, 31971–31973 (1981).

7. The travel expense provision at issue in *Flowers* was substantially the same as the provision at issue here, and was then-codified at 26 U.S.C. § 23(a)(1)(A), as amended, 56 Stat. 819.

ties of the traveler must be the motivating factors." *Flowers*, 326 U.S. at 474, 66 S.Ct. at 254. The Commissioner and courts have adhered consistently to this policy that living expenses duplicated as a result of business necessity are deductible, whereas those duplicated as a result of personal choice are not.

The principle—that living expenses are deductible to the extent business necessity requires that they be duplicated—is also reflected in cases concerning temporary and itinerant workers. The courts and the Commissioner have agreed that a taxpayer cannot be expected to relocate her primary residence to a place of temporary employment. Hence, duplicate living expenses incurred at the place of temporary employment (if different from the place of usual abode), result from business exigency in satisfaction of the third prong of the *Flowers* test. An exception to the "principal place of business" definition of "tax home" is made where the business assignment is only temporary. *See Peurifoy v. Commissioner*, 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed.2d 30 (1958) (*per curiam*); *Yeates v. Commissioner*, 873 F.2d 1159, 1160 (8th Cir. 1989) (*per curiam*); *Hantzis*, 638 F.2d at 254–55; *Six v. United States*, 450 F.2d 66 (2d Cir.1971); *Harvey v. Commissioner*, 283 F.2d 491 (9th Cir.1960). Moreover, an "itinerant" worker who has no principal place of business and has no permanent place of abode ordinarily does not bear duplicate living expenses at all, and no deduction is generally allowable. *See Deamer v. Commissioner*, 752 F.2d 337, 339 (8th Cir.1985) (*per curiam*); *Rosenspan*, 438 F.2d at 912;[8] *Duncan v. Commissioner*, 47 F.2d 1082 (2d Cir.1931); Rev. Rul. 60–189, 1960–1, C.B. 60.

■ Here, we face a situation where the Tax Court found that the taxpayer, Andrews, had two businesses which apparently required that he spend a substantial amount of time in each of two widely separate places in 1984. However, the Tax Court's conclusion—that Andrews had two "tax homes"—is inconsistent with the well-settled policy underlying section 162(a)(2): that duplicated living expenses necessitated by business are deductible. We have previously said that "a taxpayer who is required to travel to get to a place of secondary employment which is sufficiently removed from his place of primary employment is just as much within the [travel expense deduction] provision as an employee who must travel at the behest of his employer." *Chandler v. Commissioner*, 226 F.2d 467, 469 (1st Cir.1955), *disapproved on other grounds, Commissioner v. Bagley*, 374 F.2d 204, 208 n. 11 (1st Cir.1967), *cert. denied*, 389 U.S. 1046, 88 S.Ct. 761, 19 L.Ed.2d 838 (1968). On the facts the Tax Court has found, it appears that Andrews, due to his geographically disparate horse and pool construction businesses, was required to incur duplicate living expenses. The Tax Court found that Andrews maintained at least the Massachusetts house throughout the year, and duplicate expenses were seemingly incurred by maintaining the Florida house, at least in part attributable to business exigency. If so, Andrews could have had only one "home" for purposes of section 162(a)(2) in 1984; duplicate living expenses while on business at the other house were a cost of producing income.[9]

**8.** In *Rosenspan*, Judge Friendly explained the limitation that deductions are not allowable for a travelling salesman taxpayer who has no "home," notwithstanding the existence of a "business headquarters" or "principal place of business," as follows:

The limitation reflects congressional recognition of the rational distinction between the taxpayer with a permanent residence—whose travel costs represent a duplication of expense or at least an incidence of expense which the existence of his permanent residence demonstrates he would not incur absent business compulsion—and the taxpayer without such a residence.

*Rosenspan*, 438 F.2d at 912.

**9.** In support of its decision that Andrews had two "tax homes" in 1984, the Tax Court cited *Regan v. Commissioner*, 54 T.C.M. (CCH) 846, T.C. Memo 1987–512. In *Regan*, the taxpayer was employed near Tampa, Florida from January through June, and in the vicinity of Gainesville, Florida from July through December. The taxpayer argued that his home was in Tampa, and he continued to pay rent on his Tampa apartment when he was in Gainesville. Unpersuaded, the Tax Court found that the taxpayer spent an equal amount of time, engaged in an equal amount of business, derived an equal

We do not seek to instruct the Tax Court how to determine which house in 1984, in Florida or in Massachusetts, was Andrews' "tax home," and which house gave rise to deductible duplicate living expenses while "away from home in pursuit of a trade or business," for purposes of section 162(a)(2). The guiding policy must be that the taxpayer is reasonably expected to locate his "home," for tax purposes, at his "major post of duty" so as to minimize the amount of business travel away from home that is required; a decision to do otherwise is motivated not by business necessity but by personal considerations, and should not give rise to greater business travel deductions. The length of time spent engaged in business at each location should ordinarily be determinative of which is the taxpayer's "principal place of business" or "major post of duty." [10] Defining that location as the taxpayer's "tax home" should result in allowance of deductions for duplicate living expenses incurred at the other "minor post of duty." Business necessity requires that living expenses be duplicated only for the time spent engaged in business at the "minor post of duty," whether that is the "primary residence" or not. *See Montgomery v. Commissioner*, 532 F.2d 1088 (6th Cir.1976); *Markey, su-*

*pra*, 490 F.2d at 1252; *Sherman v. Commissioner*, 16 T.C. 332 (1951).

*Vacated and remanded for further proceedings consistent with this opinion.*

amount of income from his activities, and "merely rented an apartment" in both places. The Tax Court concluded from these facts that the taxpayer's principal place of business, and hence "tax home," was in Tampa from January to June, and in Gainesville from July through December. On this basis, the Tax Court sustained the disallowance of the taxpayer's deduction of travel expenses for his time in Gainesville. We doubt this decision was correct, as the taxpayer appears to have incurred duplicate lodging expenses, including at least rent, as a result of business exigency. We note that prior memorandum decisions of the Tax Court are not treated by that court as binding precedent. *Newman v. Commissioner*, 68 T.C. 494, 502 n. 4 (1977).

This is not to say we could not imagine a rare case where a finding of "two tax homes" would be appropriate and would fit within the policies underlying section 162(a)(2). A taxpayer, spending six months of the year engaged in business in each of two different places, and maintaining a permanent home in neither place (for example, living in hotels at both places), might not incur duplicate expenses. Such a

taxpayer, whether viewed in the nature of an "itinerant," *see supra*, or as having two "tax homes," should not generally be allowed to deduct meals and lodging as business travel deductions under section 162(a)(2). This, however, is not the case here.

**10.** The Sixth Circuit has established an "objective test" to determine the situs of a taxpayer's "major post of duty," including three factors: (1) the length of time spent at the location; (2) the degree of activity in each place; and (3) the relative portion of taxpayer's income derived from each place. *Markey*, 490 F.2d at 1255. The first factor would ordinarily be the most important, since the time spent as a business necessity at the location is a reasonable proxy for the amount of living expenses that business requires be incurred in each place. *See Markey*, 490 F.2d at 1252; *Sherman v. Commissioner*, 16 T.C. 332 (1951) (amount of income derived from activity at each location not controlling); Rev. Rul. 82, 1963–1 C.B. 33; Rev.Rul. 67, 1961–1, C.B. 25. We recognize, however, that other factors might be considered or even found determinative under appropriate circumstances.