MICHAEL H. WOJCIECHOWSKI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wojciechowski v. Commissioner
Docket No. 21290-88
United States Tax Court
T.C. Memo 1991-239; 1991 Tax Ct. Memo LEXIS 268; 61 T.C.M. (CCH) 2758; T.C.M. (RIA) 91239; May 29, 1991, Filed *268 Decision will be entered for the respondent. Robert D. Grossman, Jr. and Richard J. Sherback, for the petitioner. Peter J. Graziano and Robert W. Sadowski, for the respondent. WELLS, Judge.
WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioner's Federal income tax as follows: Year Amount
1982
$ 13,356
1983
15,566
1984
19,809
The issue to be decided in the instant case is whether petitioner is entitled to the foreign earned income exclusion under section 911[1] for amounts received as compensation for his services as a flight engineer. FINDINGS OF FACT Some of the facts have been stipulated for trial pursuant to Rule 91. The stipulation and accompanying exhibits are incorporated in this Opinion by reference. When he filed *269 his petition in the instant case, petitioner resided in Freeport, Grand Bahama, Bahamas. Petitioner is a United States citizen. During the years in issue, petitioner was employed as a flight engineer for The Flying Tiger Line, Inc. (Flying Tiger) and was a member of the Air Line Pilots Association, a union. Petitioner started working in the aviation field in 1946 and was a flight radio operator before becoming a flight engineer. Flying Tiger operates an international air cargo service, and petitioner's primary responsibility for Flying Tiger involved monitoring and operating various aircraft mechanical systems during the course of flight. Petitioner also was required to perform pre-flight and post-flight aircraft inspections. Petitioner's Flying Tiger "base station," i.e., the place where petitioner's trip assignments for Flying Tiger originated and ended, was John F. Kennedy International Airport (JFK) in New York City. Flying Tiger referred to JFK as petitioner's "domicile." Under the union contract applicable to petitioner, petitioner was provided with a traveling expense allowance based upon duty time away from JFK. The contract also provided that Flying Tiger was responsible *270 for furnishing lodging (and transportation to and from such lodging) to pilots (including flight engineers) while they were at "layover" stations during trip assignments. Petitioner's trip assignments potentially involved stops in five or more cities before return to JFK, and his average trip assignment usually lasted about seven days. Petitioner generally flew two trip assignments per month for ten and a half months out of the year. Petitioner became a widower in 1965. Between 1976 and 1982, he rented three different apartments in the Bahamas, sharing apartments with a friend who was a pilot. In April 1983, petitioner purchased a condominium in Freeport, Grand Bahama, Bahamas. As of the date of trial, petitioner still owned that condominium and lived there with his second wife, a Danish citizen whom he married in February 1989. The Forms W-2 reporting petitioner's compensation from Flying Tiger for the years in issue listed petitioner as having a Bahamas address and listed Flying Tiger's address as Los Angeles International Airport. Flying Tiger never imposed any residency requirements on petitioner. The union contract applicable to petitioner did, however, indicate that *271 if a pilot's base, or domicile, was transferred at the request of Flying Tiger, Flying Tiger would pay for the pilot's moving expenses to the new domicile. During the years in issue, Flying Tiger did not service the Bahamas. Petitioner chose to spend time in the Bahamas between flight assignments because he enjoyed the beauty, climate, and peaceful atmosphere of the Bahamas. Petitioner was required to report to JFK for trip assignments one hour prior to departure of his flight. Petitioner traveled to JFK on passenger airlines from Freeport, receiving a 75 percent discount on ticket prices as an airline personnel privilege. Most of petitioner's flights for Flying Tiger departed from JFK around midnight. However, when petitioner had a morning departure from JFK, he would arrive in New York the evening before and stay at a hotel close to the airport. Flying Tiger did not pay for such overnight accommodations in New York. During the years in issue, petitioner owned a house in East Meadows, New York (a suburb of New York City), in which his adult daughter lived. Petitioner previously had occupied that house, which was completely paid for. Petitioner also maintained a post office *272 box address at JFK and generally had correspondence regarding his investments sent to his JFK address because he felt that the mail service in the United States was more reliable than in the Bahamas. He received mail from Flying Tiger in the "crew" mail box at JFK. Petitioner did not maintain a mailing address at any airport other than JFK. In order to maintain his license as a flight engineer, petitioner was required to undergo FAA physical examinations. He used a doctor located in the vicinity of JFK during the years in issue for those examinations. Flying Tiger also required petitioner to attend annual flight training sessions; those sessions were held in Los Angeles. Petitioner's tax returns for the years in issue were prepared by an accounting firm located in the JFK vicinity; his investment broker was also located in New York. During the years in issue, in addition to maintaining a checking account in the Bahamas, petitioner maintained savings accounts, checking accounts, mutual fund accounts, money market accounts, and certificates of deposit with banks and investment houses located in the New York City area. In his returns for the years in issue, petitioner reported *273 his compensation from Flying Tiger as foreign earned income on Form 2555, listing his "tax home" as Freeport, Grand Bahama, Bahamas. The Bahamas did not impose an income tax during the years in issue. OPINION The foreign earned income exclusion of section 911 is restricted to "qualified individuals." Section 911(d)(1) defines the term "qualified individual" as an individual whose "tax home" is in a foreign country and who is -- (A) a citizen of the United States and establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, or (B) a citizen or resident of the United States and who, during any period of 12 consecutive months, is present in a foreign country or countries during at least 330 full days in such period.
Petitioner claims that he was a qualified individual during the years in issue pursuant to section 911(d)(1)(A) because he had a tax home in the Bahamas and was bona fide resident of the Bahamas. Petitioner must establish both tax home and residency to qualify for the section 911 exclusion; he does not claim to have satisfied *274 the 330 day test of section 911(d)(1)(B). See Harrington v. Commissioner, 93 T.C. 297, 303-304 (1989); Rule 142(a). The definition of "tax home" is contained in section 911(d)(3), which states: (3) Tax Home. -- The term "tax home" means, with respect to any individual, such individual's home for purposes of section 162(a)(2) (relating to traveling expenses while away from home). An individual shall not be treated as having a tax home in a foreign country for any period for which his abode is within the United States.
Section 1.911-2(b), Income Tax Regs., expands upon the reference to section 162(a)(2), stating that: the term "tax home" has the same meaning which it has for purposes of section 162(a)(2) (relating to travel expenses away from home). Thus, under section 911, an individual's tax home is considered to be located at his regular or principal (if more than one regular) place of business or, if the individual has no regular or principal place of business because of the nature of the business, then at his regular place of abode in a real and substantial sense. * * * Petitioner does not argue that his regular or principal place of *275 business was in the Bahamas; he freely admits that Flying Tiger did not service the Bahamas and that he had no business purpose for living there. Petitioner, however, argues that the term "tax home" generally should be construed to refer to one's place of residence, or dwelling place, and that, under such construction, the Bahamas qualifies as his tax home. Essentially, petitioner's argument is that the general rule for determining "tax home" set forth in section 1.911-2(b), Income Tax Regs., is incorrect. The approach taken in such regulation is, however, consistent with this Court's position that "home," for purposes of section 162(a)(2), and "tax home," for purposes of section 911, generally refer to the area in which the taxpayer's principal place of business is located, when the taxpayer's personal residence is not in the same vicinity. Harrington v. Commissioner, supra at 307; Horton v. Commissioner, 86 T.C. 589, 593 (1986); Mitchell v. Commissioner, 74 T.C. 578, 581 (1980). The general rule that "home," for purposes of section 162(a)(2), may be determined by reference to the taxpayer's principal place *276 of business also finds acceptance in the Fifth, Sixth, Eighth, and Ninth Circuits. See Ellwein v. United States, 778 F.2d 506, 509 (8th Cir. 1985); Michel v. Commissioner, 629 F.2d 1071, 1073 (5th Cir. 1980) (Appendix incorporating "decisive portion" of Tax Court opinion); Coombs v. Commissioner, 608 F.2d 1269, 1275-1276 (9th Cir. 1979); Markey v. Commissioner, 490 F.2d 1249, 1254 (6th Cir. 1974). The First Circuit, rather than specifically defining the term "home," has adopted a "functional" approach to section 162(a)(2) under which "The guiding policy must be that the taxpayer is reasonably expected to locate his 'home,' for tax purposes, at his 'major post of duty' so as to minimize the amount of business travel away from home that is required * * *," Andrews v. Commissioner, 931 F.2d 132 at 138 (1st Cir. 1991). Petitioner directs our attention to two Second Circuit opinions indicating that "home," for purposes of section 162(a)(2), should be defined as the taxpayer's permanent abode or residence rather than his business headquarters. Six v. United States, 450 F.2d 66, 69 (2d Cir. 1971); *277 Rosenspan v. United States, 438 F.2d 905 (2d Cir. 1971). Petitioner also argues that the Supreme Court has consistently declined to embrace the "principal place of business" definition of "home" for purposes of section 162(a)(2), citing Commissioner v. Stidger, 386 U.S. 287, 18 L. Ed. 2d 53, 87 S. Ct. 1065 (1967); Peurifoy v. Commissioner, 358 U.S. 59, 3 L. Ed. 2d 30, 79 S. Ct. 104 (1958); and Commissioner v. Flowers, 326 U.S. 465, 90 L. Ed. 203, 66 S. Ct. 250 (1946). We decline petitioner's invitation to apply the Second Circuit's definition of "home" in the instant case. As we have found in the findings of fact above, petitioner resided in the Bahamas at the time he filed his petition in the instant case. See section 7482(b). Our finding was based on petitioner's testimony, the statement of residence in his petition, and his consistent assertions on brief. In his reply brief, moreover, petitioner states that the instant case is appealable to the District of Columbia Circuit and asserts that such Circuit has never ruled on the issue of whether "home" for purposes of section 162(a)(2) means the taxpayer's principal place of business. Because the District of Columbia Circuit has not adopted *278 a position inconsistent with our rule, [2] we shall apply our own precedent. Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). Nothing in the Supreme Court cases cited by petitioner suggests that we should abandon our position on the relevant issue. We therefore refuse to adopt the definition of "tax home" suggested by petitioner. *279 As an alternative argument, petitioner asserts that, even if "tax home" generally is defined as the locale of the taxpayer's principal place of business, he falls within the exception contained in section 1.911-2(b), Income Tax Regs., for persons who have "no regular or principal place of business" and thus has a tax home at his "regular place of abode" (assertedly, the Bahamas). In support of such position, petitioner notes his constant mobility and argues that the only regular or principal place of business he could have was the cockpit of an airplane. In response, respondent cites Sislik v. Commissioner, T.C. Memo 1989-495 (on appeal, D.C. Cir. March 26, 1990), in which we rejected an identical argument by a pilot and held that his base station (JFK) constituted his principal place of business, and tax home, for purposes of section 911. Respondent also cites Swicegood v. Commissioner, T.C. Memo 1989-467 (pilot's base station airport was his tax home where the employer recognized such airport as the pilot's base of employment and a majority of the pilot's flight series began and/or terminated there). Sislik and Swicegood *280 are consistent with numerous other cases treating the airports at which flight personnel are "based" (i.e., their point of flight origination) as the principal place of business for purposes of section 162(a)(2). See Folkman v. United States, 615 F.2d 493 (9th Cir. 1980); Lagrone v. Commissioner, T.C. Memo 1988-451, affd. without published opinion 876 F.2d 893 (5th Cir. 1989); Kennedy v. Commissioner, T.C. Memo 1980-310; White v. Commissioner, T.C. Memo 1979-468; Bowman v. Commissioner, T.C. Memo 1979-432, affd. without published opinion 624 F.2d 1109 (8th Cir. 1980); Dean v. Commissioner, T.C. Memo 1976-379; Kennedy v. Commissioner, T.C. Memo 1970-58, affd. per curiam 451 F.2d 1023 (3d Cir. 1971). Applying the reasoning of such cases, petitioner's principal place of business was his base station, JFK, and petitioner's "tax home" was in the New York City vicinity. In his reply brief, petitioner attempts to distinguish Sislik and Swicegood. The only factual distinction proffered *281 by petitioner, however, is his assertion that the record here, unlike in those cases, indicates that petitioner "performs no duties at JFK that he does not perform at every airport to which his flight assignments take him and aboard his plane." We do not find such distinction persuasive, as neither Sislik nor Swicegood focused on the existence of "additional pilot duties" at the base station airport in holding such airport to constitute the principal place of business. Petitioner also argues that Barone v. Commissioner, 85 T.C. 462 (1985), affd. without published opinion 807 F.2d 177 (9th Cir. 1986), should control the instant case. In Barone, we rejected the argument of an owner-operator of a tractor trailer that his principal place of business, for purposes of section 162(a)(2), was his home terminal. In doing so, however, we pointed out that the taxpayer had the burden of proving that he had a tax home and found the facts advanced by the taxpayer in that regard (namely, that he had a home terminal and that eight trips originated or terminated there) insufficient to prove that the terminal was his tax home. The instant case presents *282 stronger facts than those present in Barone indicating the existence of a tax home. Under section 911, moreover, petitioner bears the burden of proving that he did not have a tax home in the United States. Petitioner finally argues that legislative history of section 911 mandates his entitlement to the earned income exclusion. In support of his argument, petitioner quotes extensively from the General Explanation of the Economic Recovery Tax Act of 1981 (ERTA) (prepared by the Staff of the Joint Committee on Taxation). We think that the report cited by petitioner, however, actually weakens rather than strengthens his position. More specifically, the Joint Committee report explains the purpose of the foreign earned income exclusion as follows: The Congress was concerned with the increasing competitive pressures that American businesses faced abroad. The Congress decided that in view of the nation's continuing trade deficits, it is important to allow Americans working overseas to contribute to the effort to keep American business competitive. The Congress believed that the tax burdens imposed on these individuals made it more expensive for U.S. businesses to utilize *283 American employees abroad. In many cases, the policy of these businesses is to reimburse their employees for any extra tax expenses the employees incur because of overseas transfers. Thus, an extra tax cost to the employees becomes a cost to the business, which cost often is passed through to customers in the form of higher prices. In intensely competitive industries, such as construction, this can lead to noncompetitive bids for work by American firms. * * * Accordingly, the Congress changed the tax law to encourage Americans to work abroad, in order to help promote the export of U.S. manufactured goods and services. It was decided that reducing the tax burden on Americans working abroad will make American enterprises more competitive in foreign markets. * * * [3] [Emphasis supplied.]
Thus, Congress was concerned with the treatment of Americans working abroad and with *284 the effects on U.S. business utilizing such employees. We do not believe that petitioner's decision to spend time abroad in the Bahamas for personal reasons, while remaining based in New York City for his work, was the type of activity contemplated by the ERTA legislation. We have considered petitioner's remaining arguments on the tax home issue and find them without merit. Because petitioner failed to establish that his tax home was outside the United States, we need not consider his argument with respect to residency, or respondent's argument concerning the source of petitioner's income. For the foregoing reasons, we hold for respondent. Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In an unpublished opinion, Lewia v. Commissioner, 165 U.S. App. D.C. 282, 506 F.2d 1321, 75-1 U.S. Tax Cas. (CCH) P9145 (D.C. Cir. 1974), affg. T.C. Memo 1972-168, the District of Columbia Circuit affirmed this Court's denial of certain traveling expense deductions. While the District of Columbia Circuit's memorandum in Lewia may not be cited as precedent in that Circuit under its local rules, we note that the District of Columbia Circuit's earlier opinion in York v. Commissioner, 82 U.S. App. D.C. 63, 160 F.2d 385 (D.C. Cir. 1947), has been cited as indicating that Court's agreement with the "principal place of business" definition of "home." See Commissioner v. Stidger, 386 U.S. 287, 291 n. 11, 18 L. Ed. 2d 53, 87 S. Ct. 1065 (1967). We also have indicated the District of Columbia Circuit's agreement with our test in Maresca v. Commissioner, T.C. Memo 1974-212↩.
3. Staff of J. Comm. on Taxation, General Explanation of the Economic Recovery Tax Act of 1981 at 43 (J. Comm. Print 1981).↩