In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-2169

DAVID A. WILBERT,

*Petitioner-Appellant*,

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee*.

Appeal from the United States Tax Court.
No. 29172-05—**Diane L. Kroupa**, *Judge.*

ARGUED DECEMBER 10, 2008—DECIDED JANUARY 21, 2009

Before POSNER, KANNE, and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*. The question presented by this appeal is whether an employee who uses "bumping" rights to avoid or postpone losing his job can deduct the living expenses that he incurs when he finds himself working far from home as a result of exercising those rights. The Tax Court ruled against the taxpayer, T.C. Memo 2007-152, 2007 WL 1713379, assessing a deficiency of $4,380 in his income tax payments for 2003, and he

appeals. This is one of a number of largely identical cases in the Tax Court, see, e.g., *Wasik v. Commissioner*, T.C. Memo 2007-148, 2007 WL 1702689; *Stephens v. Commissioner*, T.C. Summary Op. 2007-94, 2007 WL 1702612; *Stockwell v. Commissioner*, T.C. Memo 2007-149, 2007 WL 1702608, all brought by mechanics formerly employed by Northwest Airlines, like Wilbert, and all resolved against the taxpayer. But this seems the first case to be appealed.

Hired by Northwest in 1996, Wilbert worked for the airline at the Minneapolis airport for some years. He lived with his wife in Hudson, Wisconsin, across the Mississippi River from Minneapolis. Hudson is a suburb of Minneapolis, roughly 25 miles from the airport.

Facing financial pressures and a decline in airline traffic in the wake of the terrorist attacks of September 11, 2001, Northwest laid off many employees, including, in April 2003, Wilbert. But Northwest's mechanics each had a right to bump a more junior mechanic employed by the airline, that is, to take his job. Wilbert was able to bump a mechanic who worked for the airline in Chicago, but he worked there for only a few days before being bumped by a more senior mechanic. A few days later he was able to bump a mechanic in Anchorage, Alaska, and he worked there for three weeks before being himself bumped. He was soon able to bump a mechanic who worked in New York, at LaGuardia Airport, but he worked there for only a week before he was bumped again. At this point, he had exhausted his bumping rights. But for reasons that the parties have not

explained, three weeks later the airline hired him back, outside the bumping system, to fill an interim position (maximum nine months) in Anchorage. He occupied that position for several months before being laid off again, this time for good. At no point in his hegira did he have realistic prospects of resuming work for Northwest in Minneapolis. He now lives in a Chicago suburb and works for Federal Express at O'Hare Airport. He sells real estate on the side (self-employed), as he did when he lived in Minneapolis, but his income from his real estate business there was only $2,000 in 2003, the relevant tax year, and he did not actually receive the money (a commission) until the following year.

He did not sell or rent his home in Hudson, where his wife continued to live, while working intermittently in 2003. Because he was working too far from home to be able to live there, he incurred living expenses (amounting to almost $20,000) that he would not have incurred had he remained working in Minneapolis, and those are the expenses he deducted from the taxable income shown on his 2003 return.

The Internal Revenue Code allows the deduction, as part of "the ordinary and necessary expenses . . . incurred during the taxable year in carrying on any trade or business," of "traveling expenses . . . *while [the taxpayer is] away from home* in the pursuit of a trade or business." 26 U.S.C. § 162(a)(2) (emphasis added). There is an exception for "personal, living, or family expenses." § 262(a). The phrase we have italicized is critical. It is by an interpretation of that phrase that commuting expenses are

disallowed because of "a natural reluctance . . . to lighten the tax burden of people who have the good fortune to interweave work with consumption. To allow a deduction for commuting would confer a windfall on people who live in the suburbs and commute to work in the cities." *Moss v. Commissioner*, 758 F.2d 211, 212 (7th Cir. 1985). The length of the commute is thus irrelevant. If Wilbert had had a permanent job in Anchorage but decided to retain his home in Minneapolis and return there on weekends and during the week live in a truck stop in Wasilla, Alaska, he could not have deducted from his taxable income the expense of traveling to and fro between Minnesota and Alaska or his room and board in Wasilla. (We ignore for the moment the possibility that Mrs. Wilbert had a job in Minneapolis, and if so its relevance.)

Similarly, he could not have deducted his traveling expenses if he had had no home separate from the places he traveled to—if he had been, in the language of the cases, an "itinerant" worker, for then he would never have been "away from home" on his travels. E.g., *Fisher v. Commissioner*, 230 F.2d 79 (7th Cir. 1956); *Henderson v. Commissioner*, 143 F.3d 497 (9th Cir. 1998); *Deamer v. Commissioner*, 752 F.2d 337 (8th Cir. 1985) (per curiam). He would have been like someone whose only residence is a recreational vehicle, or a truck driver who lives in the cab of his truck, or the taxpayer in the *Fisher* case—"an itinerant professional musician, [who] traveled from city to city performing, solo, in various hotel dining rooms and cocktail lounges. These engagements varied in duration from three to four weeks, or as long as seven or eight months.

His wife and child traveled and lived with taxpayer wherever he was situated." 230 F.2d at 80.

With our hypothetical Wilbert the long-distance commuter, compare a lawyer whose home and office are both in Minneapolis but who has an international practice and as a result spends more time on the road than he does at home. Nevertheless he can deduct his traveling expenses. His work requires him to maintain a home within normal commuting distance of Minneapolis because that is where his office is, but his work also requires him to travel, and the expenses he incurs in traveling are necessary to his work and he cannot offset them by relocating his residence to the places to which he travels because he has to maintain a home near his office. And likewise if, as in *Andrews v. Commissioner*, 931 F.2d 132 (1st Cir. 1991), the taxpayer has to make such frequent trips to a particular site that it is more economical for him to rent or buy a second residence, at that site, than to live there in a hotel.

Wilbert's case falls in between our two hypothetical cases. Unlike the lawyer, he did not have to live near Minneapolis after the initial layoff because he had no work there (ignoring for the moment his real estate business). But unlike the imaginary Wilbert who has a permanent job in Alaska and so could readily relocate his home there, the real Wilbert had jobs of indefinite, unpredictable duration in Alaska (and Chicago, and New York). It would hardly have been realistic to expect him to pull up stakes and move to Anchorage and then to Chicago and then to New York and then back to Anchorage.

Remember that his first stint after the initial layoff lasted only days, his second only weeks, and the third only one week. His situation was unlike that of the employee of a New York firm who, if he chooses to live in Scarsdale rather than on Fifth Avenue, is forbidden to deduct from his taxable income the commuting expense that he incurs by virtue of his choice; it is a personal choice—suburban over urban living—rather than anything necessitated by his job.

The Tax Court, with some judicial support, has tried to resolve cases such as this by asking whether the taxpayer's work away from home is "temporary" or "indefinite," and allowing the deduction of traveling expenses only if it is the former. E.g., *Peurifoy v. Commissioner*, 358 U.S. 59 (1958) (per curiam); *Kasun v. United States*, 671 F.2d 1059 (7th Cir. 1982); Michael D. Rose & John C. Chommie, *Federal Income Taxation* § 3.10, pp. 117-20 (3d ed. 1988). The Internal Revenue Code does not explicitly adopt the distinction, but does provide (with an immaterial exception) that "the taxpayer shall not be treated as being temporarily away from home during any period of employment if such period exceeds 1 year." 26 U.S.C. § 162(a).

The problem with the Tax Court's distinction is that work can be, and usually is, both temporary and indefinite, as in our lawyer example. A lawsuit he is trying in London might settle on the second day, or last a month; his sojourn away from his office will therefore be both temporary *and* indefinite. Indeed *all* work is indefinite and much "permanent" work is really temporary. An

academic lawyer might accept a five-year appointment as an assistant professor with every expectation of obtaining tenure at the end of that period at that or another law school; yet one would not describe him as a "temporary" employee even if he left after six months and thus was not barred from claiming temporary status by the one-year rule. Our imaginary Wilbert who has a permanent job in Anchorage but is reluctant to move there from Minneapolis might argue (at least until he had worked a year, the statutory cutoff for "temporary" work) that no job is "permanent"—he might be fired, or he might harbor realistic hopes of getting a better job back in Minneapolis. That possibility would not permit him to deduct the expense of commuting from Minnesota to Alaska.

So "temporary versus indefinite" does not work well as a test of deductibility and neither does "personal choice versus reasonable response to the employment situation," tempting as the latter formula is because of its realism. If no reasonable person would relocate to his new place of work because of uncertainty about the duration of the new job, his choice to stay where he is, unlike a choice to commute from a suburb to the city in which one's office is located rather than live in the city, is not an optional personal choice like deciding to stay at a Four Seasons or a Ritz Carlton, but a choice forced by circumstances. Wilbert when first notified that he was being laid off could foresee a series of temporary jobs all across the country and not even limited, as we know, to the lower 48 states, and the costs of moving his home to the location of each temporary job would have been

prohibitive. It would have meant moving four times in one year on a mechanic's salary to cities hundreds or (in the case of Anchorage versus Minneapolis, Chicago, or New York) thousands of miles apart.

The problem with a test that focuses on the reasonableness of the taxpayer's decision not to move is that it is bound to prove nebulous in application. For it just asks the taxpayer to give a good reason for not moving his home when he gets a job in a different place, and if he gave a good reason then his traveling expenses would be deductible as the product of a reasonable balancing of personal and business considerations. In the oft-cited case of *Hantzis v. Commissioner*, 638 F.2d 248 (1st Cir. 1981), the question was whether a law student who lived in Boston with her husband during the school year could deduct her traveling expenses when she took a summer job in New York. Given the temporary nature of the job, it made perfectly good sense for her to retain her home in Boston and just camp out, as it were, in New York. What persuaded the court to reject the deduction was that she had no *business* reason to retain the house in Boston. *Id*. at 255. Stated differently, she had no business reason to be living in two places at once, *id*. at 256, unlike the lawyer in our example. And so the expenses she incurred living in New York could not be thought "ordinary and *necessary* expenses . . . incurred . . . in carrying on any trade or business."

If this seems rather a mechanical reading of the statute, it has the support not only of the influential precedent of *Hantzis* but also of the even more influential precedent

of *Commissioner v. Flowers*, 326 U.S. 465, 474 (1946), where the Supreme Court said that "the exigencies of business rather than the personal conveniences and necessities of the traveler must be the motivating factors" in the decision to travel. The "business exigencies" rule, though harsh, is supported by compelling considerations of administrability. To apply a test of reasonableness the Internal Revenue Service would first have to decide whether the taxpayer should have moved to his new place of work. This might require answering such questions as whether the schools in the area of his new job were far worse than those his children currently attend, whether his elderly parents live near his existing home and require his attention, and whether his children have psychological problems that make it difficult for them to find new friends. Were it decided that it was reasonable for the taxpayer to stay put, it would then become necessary to determine whether the expenses he incurred in traveling to and from his various places of work for home visits had been reasonable—whether in other words such commutes, in point of frequency, were "ordinary and necessary" business expenses. The Internal Revenue Service would have to establish norms of reasonable home visits that presumably would vary with such things as distance and how many of the taxpayer's children were living at home and how old they were.

We are sympathetic to Wilbert's plight and recognize the artificiality of supposing that, as the government argues, he made merely a personal choice to "commute" from Minneapolis to Anchorage, and Chicago, and New

York, as if Minneapolis were a suburb of those cities. But the statutory language, the precedents, and the considerations of administrability that we have emphasized persuade us to reject the test of reasonableness. The "temporary versus indefinite" test is no better, so we fall back on the rule of *Flowers* and *Hantzis* that unless the taxpayer has a business rather than a personal reason to be living in two places he cannot deduct his traveling expenses if he decides not to move. Indeed, Wilbert's situation is really no different from the common case of the construction worker who works at different sites throughout the country, never certain how long each stint will last and reluctant therefore to relocate his home. The construction worker loses, as must Wilbert. E.g., *Yeats v. Commissioner*, 873 F.2d 1159 (8th Cir. 1989).

We might well have a different case if Wilbert had had a firm, justified expectation of being restored to his job at the Minneapolis airport within a short time of his initial layoff. Suppose the airline had said to him, "We must lay you off, but you will be able to bump a less senior employee in Anchorage for a few weeks, and we are confident that by then, given your seniority, you will be able to return to Minneapolis." His situation would then be comparable to that of a Minneapolis lawyer ordered by his senior partner to spend the next month trying a case in Anchorage. But that is not this case.

Wilbert has another string to his bow, however, arguing that he had two businesses, not one, the other being the sale of real estate, and that because that business was centered in Minneapolis he had a business reason to live

near there. This would be a good argument if selling real estate were his main business. *Andrews v. Commissioner*, *supra*, 931 F.2d at 138; *Ziporyn v. Commissioner*, T.C. Memo 1997-151, 1997 WL 129359; *Sherman v. Commissioner*, 16 T.C. 332, 337 (1951); William A. Klein, Joseph Bankman & Daniel N. Shaviro, *Federal Income Taxation* 465 (14th ed. 2006); 1 Boris I. Bittker & Lawrence Lokken, *Federal Taxation of Income, Estates and Gifts* ¶ 21.1.6, pp. 21-20 to 21-21 (3d ed. 1999). But obviously it is not, or at least was not in 2003, when his total income (and in an accrual rather than a cash sense) from selling real estate was only $2,000.

As explained in *Andrews*, "The guiding policy must be that the taxpayer is reasonably expected to locate his 'home,' for tax purposes, at his 'major post of duty' so as to minimize the amount of business travel away from home that is required; a decision to do otherwise is motivated not by business necessity but by personal considerations, and should not give rise to greater business travel deductions." 931 F.2d at 138. If Wilbert had had to travel back to Minneapolis from his new tax "homes" from time to time in order to attend to his real estate business, the travel expense (if the business was really the reason for the travel home), and conceivably even some of his living expenses at his home (his "secondary" home, in a tax sense, since his primary home for tax purposes would follow his work), might have been deductible, just as his expenses for the office equipment that he purchased in his real estate business were. 1 Bittker & Lokken, *supra*, ¶ 21.1.6, p. 21-21; see *Sherman v. Commissioner*, *supra*. But he does not argue for such a deduction.

For completeness we note that if Wilbert's wife had a business in Minneapolis, this would make it all the more reasonable for Wilbert not to move away from Minneapolis. But it would not permit him to deduct his traveling expenses, because his decision to live with his wife (if only on occasional weekends) would (setting aside any considerations relating to his real estate sideline) be a personal rather than a business decision. *Hantzis v. Commissioner*, *supra*, 638 F.2d at 254 and n. 11 ("in this respect, Mr. and Mrs. Hantzis' situation is analogous to cases involving spouses with careers in different locations. Each must independently satisfy the requirement that deductions taken for travel expenses incurred in the pursuit of a trade or business arise while he or she is away from home"); *Chwalow v. Commissioner*, 470 F.2d 475, 477-78 (3d Cir. 1972); 1 Bittker & Lokken, *supra*, ¶ 21.1.8, pp. 21-23 to 21-24; Rose & Chommie, *supra*, § 3.10, pp. 114-15.

The appeal presents some additional issues, but they are adequately discussed in the Tax Court's opinion.

AFFIRMED.