T.C. Memo. 2007-148

UNITED STATES TAX COURT

STANLEY A. AND CONNIE A. WASIK, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20920-05.                    Filed June 13, 2007.

Stanley A. and Connie A. Wasik, pro sese.

<u>Blaine Holiday</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined a $4,373 deficiency in
petitioners' Federal income tax for 2003.  After concessions,[1] we
are asked to decide two issues.  First, we are asked to decide
whether petitioner Stanley Wasik (Mr. Wasik) was away from home

---

[1]See <u>infra</u> note 3 for the concessions each party made.

when he worked as an airline mechanic for Northwest Airlines (NWA) in Milwaukee to determine whether petitioners are entitled to deduct expenses for his vehicle, meals, and lodging while Mr. Wasik was away from Prior Lake, Minnesota, in the Minneapolis area where he normally lived. We conclude that he was not away from home when he worked in Milwaukee.[2] Second, we are asked to decide whether petitioners substantiated various other expenses. We conclude that petitioners have substantiated and are entitled to deduct some of these other expenses.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioners resided in Prior Lake, Minnesota, at the time they filed the petition.

Mr. Wasik's Employment With NWA

Mr. Wasik began working in the airline industry as a mechanic in 1986. After working for 4 years with Trans World Airlines, Mr. Wasik began working for NWA. Mr. Wasik worked for NWA for a total of 15 years, mostly in Minneapolis.

NWA sent layoff notices to some of its employees when it experienced financial difficulties. The employees receiving the notices could either choose to accept the layoff or exercise their seniority. Seniority depended on the length of time an

---

[2]As more fully described infra, we do find that Mr. Wasik is entitled to deduct vehicle expenses for a training trip to Duluth, Minnesota.

employee had worked for NWA regardless of where the airline facility was located. An employee with higher seniority could exercise his or her seniority to bump an employee with less seniority and take that employee's position. The employee with less seniority could then take the layoff or find another employee with less seniority to bump. This seniority bumping arrangement was in place across the country, so that an NWA mechanic looking to keep his or her job at NWA had to look at several different cities to find a less senior employee to bump. Most employees exercised their seniority in the way that would give them positions in cities as close as possible to their families.

Mr. Wasik received a bump notice in September 2003. Mr. Wasik looked into other job opportunities in the Minneapolis area but did not find an opportunity that was right for him. Mr. Wasik chose to exercise his seniority and bump another employee rather than accept the layoff. Bumping another employee meant that Mr. Wasik could retain his health care benefits. Mr. Wasik was able to bump to Milwaukee, Wisconsin. Mr. Wasik was not experienced with the type of aircraft typically arriving in Milwaukee, so NWA first sent Mr. Wasik for training in Duluth, Minnesota, to learn the skills he needed for the Milwaukee job. Mr. Wasik was in Duluth for 2 weeks at the end of September 2003. NWA reimbursed Mr. Wasik for his lodging and meals while he was

attending training in Duluth, but not for vehicle expenses. Mr. Wasik began the Milwaukee position on October 8, 2003.

Mr. Wasik's position in Milwaukee had no defined end date. He hoped to return to Minneapolis soon. He understood that union representatives were meeting with NWA representatives on behalf of the mechanics in an effort to return some of them to Minneapolis. He expected he would be able to return to Minneapolis as soon as there was an NWA job available there that he had enough seniority to obtain. The timing of a return to Minneapolis would depend on NWA's needs for mechanics in that city as well as the choices of the other mechanics also subject to the seniority system. Mr. Wasik worked in Milwaukee until the end of September 2004, days short of a year.

Mr. Wasik and petitioner Connie Wasik (Mrs. Wasik) decided that Mrs. Wasik, a homemaker, and their children should remain in Minnesota while Mr. Wasik worked in Milwaukee. They did not want to uproot their family and thus decided that Mr. Wasik would incur additional travel, lodging, and meal expenses in Milwaukee rather than have the entire family move there. Mr. Wasik rented an apartment in the Milwaukee area with three other NWA mechanics during the week, and he traveled to the Minneapolis area to visit his family on the weekends.

Mr. Wasik had a cellular phone and bought some computer equipment during 2003. Mr. Wasik also claimed he purchased

safety shoes and supplies during 2003.  Petitioners subscribed to the Minneapolis Star Tribune newspaper, and everyone in the family read it.

Mr. Wasik wore a uniform while he worked for NWA.  He needed to clean his uniforms often because his work involved airline fuel and oil and was messy.

Petitioners claimed they contributed some items to charity and made cash contributions in 2003.

Petitioners' Return

Petitioners claimed certain expenses on Schedule A, Itemized Deductions, on the joint return for 2003.  Respondent examined the return for 2003 and issued petitioners a deficiency notice in which he disallowed many of the expenses.  Of the expenses still in dispute,[3] petitioners assert they are entitled to deduct claimed cash and noncash charitable contributions as well as unreimbursed employee business expenses.  The unreimbursed employee business expense deductions petitioners claimed include expenses for Mr. Wasik's vehicle while in Duluth and Milwaukee, lodging and meals while in Milwaukee, and expenses for safety

---

[3]Respondent concedes that petitioners are entitled to deduct State and local taxes, real estate taxes, a portion of personal property taxes, home mortgage interest, certain amounts for tools, a portion of union dues, and tax preparation fees. Petitioners have conceded they are not entitled to deduct fax machine expenses, Internet expenses, and investment expenses.

shoes, supplies, uniform cleaning, financial publications, cellular telephone, and equipment.

Petitioners timely filed a petition.

OPINION

The parties resolved many of the disputed expenses before trial. We are asked to determine whether petitioners are entitled to deduct the remaining expenses. We begin by considering whether Mr. Wasik was away from home when he incurred expenses for his vehicle, meals, and lodging in Milwaukee and his vehicle expenses he incurred when attending training in Duluth.

Travel Expenses While Away From Home

We begin by briefly outlining the rules for deducting travel expenses. A taxpayer may deduct reasonable and necessary travel expenses such as those for vehicles, meals, and lodging incurred while away from home in the pursuit of a trade or business. Secs. 162(a)(2), 262(a).[4] A taxpayer must show that he or she was away from home when he or she incurred the expense, that the expense is reasonable and necessary, and that the expense was incurred in pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465, 470 (1946). The determination of whether the taxpayer has satisfied these requirements is a question of fact. Id.

_____

[4]All section references are to the Internal Revenue Code in effect for 2003, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

The purpose of the deduction for expenses incurred away from home is to alleviate the burden on the taxpayer whose business needs require him or her to maintain two homes and therefore incur duplicate living expenses. Kroll v. Commissioner, 49 T.C. 557, 562 (1968). The duplicate costs are not deductible where the taxpayer maintains two homes for personal reasons. Sec. 262; Commissioner v. Flowers, supra at 474.

A taxpayer may deduct the expenses he or she incurred while away from home. Sec. 162(a)(2). The word "home" for purposes of section 162(a)(2) has a special meaning. It generally refers to the area of a taxpayer's principal place of employment, not the taxpayer's personal residence. Daly v. Commissioner, 72 T.C. 190, 195 (1979), affd. 662 F.2d 253 (4th Cir. 1981); Kroll v. Commissioner, supra at 561-562.

There is an exception to the general rule that a taxpayer's tax home is his or her principal place of employment. Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958). The taxpayer's tax home may be the taxpayer's personal residence if the taxpayer's employment away from home is temporary. Id.; Mitchell v. Commissioner, T.C. Memo. 1999-283. On the other hand, the exception does not apply and the taxpayer's tax home remains the principal place of employment if the employment away from home is indefinite. Kroll v. Commissioner, supra at 562.

It is presumed that a taxpayer will generally choose to live near his or her place of employment. <u>Frederick v. United States</u>, 603 F.2d 1292, 1295 (8th Cir. 1979). A taxpayer must, however, have a principal place of employment and accept temporary work in another location to be away from home. <u>Kroll v. Commissioner</u>, <u>supra</u>. A person who has no principal place of business nor a place he or she resides permanently is an itinerant and has no tax home from which he or she can be away. <u>Deamer v. Commissioner</u>, 752 F.2d 337, 339 (8th Cir. 1985), affg. T.C. Memo. 1984-63; <u>Edwards v. Commissioner</u>, T.C. Memo. 1987-396.

All the facts and circumstances are considered in determining whether a taxpayer has a tax home. See Rev. Rul. 73-529, 1973-2 C.B. 37 (describing objective factors the Commissioner considers in determining whether a taxpayer has a tax home). The taxpayer must generally have some business justification to maintain the first residence, beyond purely personal reasons, to be entitled to deduct expenses incurred while temporarily away from that home. <u>Hantzis v. Commissioner</u>, 638 F.2d 248, 255 (1st Cir. 1981); <u>Bochner v. Commissioner</u>, 67 T.C. 824, 828 (1977); <u>Tucker v. Commissioner</u>, 55 T.C. 783, 787 (1971). Where a taxpayer has no business connections with the primary residence, there is no compelling reason to maintain that residence and incur substantial, continuous, and duplicative expenses elsewhere. See <u>Henderson v. Commissioner</u>, 143 F.3d 497,

499 (9th Cir. 1998), affg. T.C. Memo. 1995-559; <u>Deamer v. Commissioner</u>, <u>supra</u>; <u>Hantzis v. Commissioner</u>, <u>supra</u>. In that situation, the expenses incurred while temporarily away from that residence are not deductible. <u>Hantzis v. Commissioner</u>, <u>supra</u>; <u>Bochner v. Commissioner</u>, <u>supra</u>; <u>Tucker v. Commissioner</u>, <u>supra</u>; see <u>McNeill v. Commissioner</u>, T.C. Memo. 2003-65; <u>Aldea v. Commissioner</u>, T.C. Memo. 2000-136.

We now consider whether Mr. Wasik was away from home when he was bumped from Minneapolis and took a position in Milwaukee. Once Mr. Wasik was bumped from Minneapolis, he had no job to return to there. His choices were to be laid off and have no work, or to bump other employees and move to different cities to continue working. NWA gave Mr. Wasik no end date for his position in Milwaukee. NWA no longer required Mr. Wasik to perform any services whatsoever in the Minneapolis area once he was bumped. Mr. Wasik introduced evidence that he searched for work in the Minneapolis area but was unsuccessful. Although Mrs. Wasik and the family remained in the family residence with occasional visits from Mr. Wasik while Mr. Wasik worked in Milwaukee, this fact alone does not dictate that Mr. Wasik's tax home was in Prior Lake, Minnesota, where the family residence was located. Unlike traveling salespersons who may be required to return to the home city occasionally between business trips, Mr.

Wasik's business ties to the Minneapolis area ceased when he was bumped.

The Court understands that the NWA mechanics' lives were unsettled and disrupted. Mechanics did not know how long they would have a job in one specific location. They only knew the system was based on seniority. They could bump less senior employees, and they could be bumped by more senior employees. While we acknowledge that Mr. Wasik would have liked to return to the Minneapolis area to work for NWA, Mr. Wasik did not know when such a return would be possible due to the seniority system. The likelihood of Mr. Wasik's return to a position in Minneapolis depended on NWA's needs for mechanics there as well as the choices of more senior mechanics. Mr. Wasik did not know how long he would be in Milwaukee or where he might go next. It was not foreseeable that he would be able to return to Minneapolis at any time due to the seniority system.

Mr. Wasik testified that he thought his position in Milwaukee would not last very long because he thought union representatives were negotiating with NWA to return some displaced mechanics to Minneapolis. Mr. Wasik acknowledged that nothing was guaranteed, however, although he believed the union was doing what it could for the mechanics. Petitioners did not introduce evidence pertaining to the status of negotiations between NWA and the union at the time Mr. Wasik accepted the

Milwaukee job nor evidence indicating that Mr. Wasik even would have known the substance of the negotiations or how they were proceeding.  Moreover, even assuming the union representatives did ultimately agree with NWA that NWA would add new mechanic jobs in Minneapolis at some future time, these jobs would likely also be subject to the seniority system.  Thus, Mr. Wasik would have no way to know whether he would be senior enough to obtain one of the Minneapolis jobs if and when the Minneapolis jobs were made available at some future, unknown date.  The Court also takes judicial notice that union negotiations did not prevail.  Mr. Wasik's return to Minneapolis was not foreseeable because of the prospect of union negotiations.

We conclude there was no business reason for petitioners to maintain a home in the Minneapolis area.  Petitioners kept the family residence in the Minneapolis area for purely personal reasons.  Accordingly, Mr. Wasik was not away from home in Milwaukee, and the expenses he incurred while there are not deductible.

We next examine petitioners' argument that they are entitled to deduct vehicle expenses Mr. Wasik incurred traveling to Duluth for training before beginning the Milwaukee position. Respondent focuses his arguments on brief on the Milwaukee position and fails to address whether Mr. Wasik was away from home while he was training in Duluth.  Respondent acknowledges that NWA

considered Mr. Wasik to be away from Milwaukee during that time and reimbursed Mr. Wasik's meals and lodging for that reason. It appears under the circumstances that respondent has conceded that Mr. Wasik was temporarily away from home with respect to the 2-week training session in Duluth. We shall discuss, therefore, infra whether petitioners met the strict substantiation requirements under section 274(d) concerning the vehicle expenses incurred traveling to Duluth for training.

Substantiation of Expenses

We next turn to the substantiation issues to determine whether petitioners are entitled to deduct any remaining expenses. We begin by noting the fundamental principle that the Commissioner's determinations are generally presumed correct, and the taxpayer bears the burden of proving that these determinations are erroneous.[5] Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111 (1933). Moreover, deductions are a matter of legislative grace, and the taxpayer has the burden to prove he or she is entitled to any deduction claimed. Rule 142(a); Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, supra.

---

[5]Petitioners do not claim the burden of proof shifts to respondent under sec. 7491(a). Petitioners also did not establish they satisfy the requirements of sec. 7491(a)(2). We therefore find that the burden of proof remains with petitioners.

This includes the burden of substantiation.  <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

A taxpayer must substantiate amounts claimed as deductions by maintaining the records necessary to establish he or she is entitled to the deductions.  Sec. 6001; <u>Hradesky v. Commissioner</u>, <u>supra</u>.  The taxpayer shall keep such permanent records or books of account as are sufficient to establish the amounts of deductions claimed on the return.  Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.  The Court need not accept a taxpayer's self-serving testimony when the taxpayer fails to present corroborative evidence.  <u>Beam v. Commissioner</u>, T.C. Memo. 1990-304 (citing <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986)), affd. without published opinion 956 F.2d 1166 (9th Cir. 1992).

<u>Unreimbursed Employee Business Expenses</u>

We shall now consider whether petitioners are entitled to deduct the claimed expenses, beginning with the unreimbursed employee business expenses petitioners claimed on Schedule A.

In general, all ordinary and necessary expenses paid or incurred in carrying on a trade or business during the taxable year are deductible, but personal, living, or family expenses are not deductible.  Secs. 162(a), 262.  Services performed by an employee constitute a trade or business.  <u>O'Malley v.</u>

Commissioner, 91 T.C. 352, 363-364 (1988); sec. 1.162-17(a), Income Tax Regs.

If a taxpayer establishes that he or she paid or incurred a deductible business expense but does not establish the amount of the deduction, we may approximate the amount of the allowable deduction, bearing heavily against the taxpayer whose inexactitude is of his or her own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). For the Cohan rule to apply, however, a basis must exist on which this Court can make an approximation. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Without such a basis, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Certain business expenses may not be estimated because of the strict substantiation requirements of section 274(d). See sec. 280F(d)(4)(A); Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969). For such expenses, only certain types of documentary evidence will suffice.

Safety Shoes

We now examine those expenses not subject to the strict substantiation requirements. Petitioners claimed $104 for safety shoes during 2003. A taxpayer is entitled to deduct unreimbursed employee expenses only to the extent that the taxpayer

demonstrates that he or she could not have been reimbursed for such expenses by his or her employer.  Sec. 162(a); Podems v. Commissioner, 24 T.C. 21, 23 (1955).

Petitioners offered no receipts from the store where the safety shoes were allegedly purchased.  Moreover, petitioners failed to show that NWA did not reimburse Mr. Wasik for the safety shoes.  Petitioners have not provided adequate substantiation for this claimed expense.  Petitioners are therefore not entitled to a deduction for safety shoes for 2003.

Supplies

Petitioners claimed $300 for supplies during 2003.  Mr. Wasik acknowledged at trial that he was not sure what supplies he sought to deduct on the return.  Petitioners offered no testimony regarding what specific supplies Mr. Wasik needed for his job or even what supplies petitioners sought to deduct.  We conclude that petitioners are not entitled to a deduction for supplies for 2003.

Cleaning Expenses for Uniforms

Petitioners claimed $720 for cleaning expenses for Mr. Wasik's NWA uniforms.  Expenses for uniforms are deductible if the uniforms are of a type specifically required as a condition of employment, the uniforms are not adaptable to general use as ordinary clothing, and the uniforms are not worn as ordinary

clothing.  <u>Yeomans v. Commissioner</u>, 30 T.C. 757, 767-769 (1958); <u>Beckey v. Commissioner</u>, T.C. Memo. 1994-514.

We are satisfied that petitioners incurred deductible expenses to clean Mr. Wasik's uniforms.  Mr. Wasik gave unclear testimony, however, regarding how he calculated the cleaning costs.  Petitioners introduced a document on the letterhead of his certified public accountant that purports to indicate how the sum was calculated, but it suggests an excessive amount, 22 cleanings for shirts and pants per month, roughly corresponding to the number of days per month Mr. Wasik worked.

We may estimate the amount of deductible cleaning expenses under the <u>Cohan</u> rule.  We adopt the unit cost of $1.36 listed on petitioners' exhibit as the cost to wash or dry one load of laundry.  We find that approximately eight loads of laundry per month is a reasonable number to yield 22 clean shirts and pairs of pants per month.  Petitioners are therefore entitled to deduct $261.12 for cleaning expenses for Mr. Wasik's uniforms in 2003.

Publications

Petitioners claimed $680 for publications.  Petitioners introduced copies of checks made out to Star Tribune totaling $225.16.  Mr. Wasik testified that the amount petitioners claimed included the Star Tribune delivered to the family home in Minnesota that everyone in the family read as well as costs for financial publications that Mr. Wasik used to monitor

investments.  Petitioners did not keep receipts for the purchase of the financial publications.

The cost of a daily newspaper of general circulation is generally nondeductible.  Wheeler v. Commissioner, T.C. Memo. 1984-425.  Petitioners also have not introduced any receipts for the other financial publications and thus have not substantiated expenses for these publications.  We conclude that petitioners are therefore not entitled to any deduction for publications in 2003.

Expenses Subject to Strict Substantiation Requirements

We now consider those expenses that are subject to the additional strict substantiation requirements under section 274(d).  Expenses subject to strict substantiation may not be estimated under the Cohan rule.  Sanford v. Commissioner, supra at 827.

Cellular Phone Expenses

Petitioners claimed $1,668 for cellular phone expenses for 2003.  Cellular phones are included in the definition of "listed property" for purposes of sections 274(d)(4) and 280F(d)(4)(A)(v) and are thus subject to the strict substantiation requirements. Gaylord v. Commissioner, T.C. Memo. 2003-273.  A taxpayer must establish the amount of business use and the amount of total use for the property.  Nitschke v. Commissioner, T.C. Memo. 2000-230;

sec. 1.274-5T(b)(6)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Petitioners offered no testimony regarding their claimed expenses for the cellular phone.  Petitioners did introduce copies of checks made out to Verizon Wireless totaling $1,250.46, which is less than the claimed deduction.  Petitioners did not provide any breakdown of the personal versus business use of the cellular phone.  In addition, petitioners failed to introduce any testimony or evidence to prove that NWA required Mr. Wasik to have a cellular phone.  Petitioners are therefore not entitled to deduct any cellular phone expenses for 2003.

### Equipment Expenses

Petitioners claimed $3,500 of equipment expenses. Petitioners introduced a Best Buy receipt for a computer for $1,837 to support their deduction.  Petitioners did not introduce any evidence that NWA required Mr. Wasik to have a computer or that he used the computer for business purposes.  Petitioners also gave no explanation of what equipment made up the roughly $1,600 difference between the cost of the computer and the amount petitioners claimed.  Mr. Wasik admitted that the deduction was a mistake.  We conclude that petitioners are not entitled to deduct $3,500 for equipment.

Vehicle Expenses for Travel to Duluth for Training

We now consider whether petitioners are entitled to deduct vehicle expenses incurred in connection with Mr. Wasik's training trip to Duluth.

Passenger automobiles are listed property under section 280F, and strict substantiation is therefore required. Sec. 274(d)(4). No deduction is allowed for any travel expense unless the taxpayer corroborates by adequate records or by sufficient evidence corroborating the taxpayer's own statement the amount of the expense, the mileage for each business use of the automobile and the total mileage for all use of the automobile during the taxable period, the date of the business use, and the business purpose for the use. Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). Adequate records include the maintenance of an account book, diary, log, statement of expenses, trip sheets, and/or other documentary evidence, which, in combination, are sufficient to establish each element of expenditure or use. Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

Taxpayers may use a standard mileage rate established by the Internal Revenue Service in lieu of substantiating the actual amount of the expenditure. See sec. 1.274-5(j)(2), Income Tax Regs. The standard mileage rate is generally multiplied by the number of business miles traveled. See Rev. Proc. 2002-61, 2002-

2 C.B. 616 (in effect for transportation expenses incurred during 2003).  The use of the standard mileage rate establishes only the amount deemed expended with respect to the business use of a passenger automobile.  Sec. 1.274-5(j)(2), Income Tax Regs.  The taxpayer must still establish the actual mileage, the time, and the business purpose of each use.  Nicely v. Commissioner, T.C. Memo. 2006-172; sec. 1.274-5(j)(2), Income Tax Regs.

Petitioners claimed $810 for vehicle expenses, a portion of which is attributable to Mr. Wasik's travel to Duluth for training.  Petitioners used the standard business mileage rate of 36 cents per mile in effect for 2003 in computing their vehicle expenses.  Petitioners introduced a calendar indicating the days in September and October Mr. Wasik drove from Prior Lake, Minnesota, to Duluth, Minnesota, a total of two round trips.  Petitioners also introduced evidence indicating the 180-mile distance between petitioners' home and Duluth.  We are satisfied that petitioners substantiated the mileage and met the strict substantiation requirements relating to the vehicle expenses for the Duluth travel.  After applying the standard mileage rate in effect for 2003, we find that petitioners are entitled to deduct $259.20 for vehicle expenses for 2003.

Charitable Contributions

We finally consider petitioners' charitable contributions. Petitioners claimed they contributed $2,575 cash and $1,073 of

property to charitable organizations in 2003. Charitable contributions are generally deductible under section 170(a). No deduction is allowed, however, for any contribution of $250 or more unless the taxpayer substantiates the contribution by a contemporaneous written acknowledgment of the contribution by a qualified donee organization. Sec. 170(f)(8)(A). The deduction for a contribution of property equals its fair market value on the date contributed. Sec. 1.170A-1(c)(1), Income Tax Regs.

A taxpayer claiming a charitable contribution of money is generally required to maintain for each contribution a canceled check, a receipt from the donee charitable organization showing the name of the organization and the date and amount of the contribution, or other reliable written records showing the name of the donee and the date and amount of the contribution. Sec. 1.170A-13(a)(1), Income Tax Regs.

We first consider petitioners' cash contributions. Petitioners claimed they donated to their hometown church in 2003 and introduced a list they created with the name and address of the church and the dates and amounts of contributions, totaling $464.[6] Petitioners did not use the numbered envelopes provided by the church that would have allowed the church to verify and

---

[6]The remaining balance of the $2,575 claimed cash donations appears not to be a donation of cash at all, but the videotapes Mr. Wasik claims to have purchased and allowed Prior Lake Athletics for Youth (P.L.A.Y.) coaches to view.

substantiate donations they made and introduced no receipts or acknowledgment from the church of any contributions. The balance of the evidence introduced to substantiate petitioners' cash contributions relates to Prior Lake Athletics For Youth (P.L.A.Y.). Mr. Wasik testified that he purchased instructional videos and kept them at his home, but that he told the other P.L.A.Y. coaches they were free to use the videos. Mr. Wasik acknowledged that he did not donate money to the organization.

We are convinced that petitioners attended the church and donated money. We may estimate such cash charitable contributions under the Cohan rule.[7] See Fontanilla v. Commissioner, T.C. Memo. 1999-156. We conclude that petitioners are entitled to deduct $400 of cash charitable contributions to the church. Petitioners are not entitled to deduct any amount for cash charitable contributions related to the instructional videos as they acknowledged they did not make any cash contributions to that organization. Moreover, we note that donations must be to the charity. Petitioners may not deduct the costs of videos they purchased as a charitable contribution

---

[7]There are now stricter requirements for contributions of money. Sec. 170(f)(17). No deduction for a contribution of money in any amount is allowed unless the donor maintains a bank record or written communication from the donee showing the name of the donee organization, the date of the contribution, and the amount of the contribution. Id. This new provision is effective for contributions made in tax years beginning after Aug. 17, 2006. Pension Protection Act of 2006, Pub. L. 109-280, sec. 1217, 120 Stat. 1080.

unless they actually contributed the videos to the charity and substantiated the contribution with a receipt from the charity for the donation.

We next turn to petitioners' contributions of property. Petitioners provided a receipt from the CAP Agency, and Mrs. Wasik testified she added the amount, $1,284, to the receipt. Petitioners also introduced a detailed three-page handwritten list of the items donated and the estimated values, totaling about $3,800, well over the $1,284 written on the receipt. Petitioners stated on the return, however, that they donated property worth $1,073 to Goodwill Industries. Mrs. Wasik stated that when preparing the detailed list of items, she simply estimated their values according to what each item was and how old it was.

We are troubled by the significant inconsistencies and contradictions in the evidence and testimony on this issue. Petitioners introduced a receipt from an organization different from the organization they claimed on their return. In addition, petitioners' tax return reflects a different amount from petitioners' receipt, which reflects a still different amount from petitioners' handwritten notes. Mrs. Wasik did not explain these discrepancies at trial to the Court's satisfaction.

We do not find this inconsistent, contradictory testimony to be credible, and we decline to accept it. We find that

petitioners have not substantiated to which charities they donated property or the value of that property. Petitioners are therefore not entitled to deduct any amount for charitable contributions of property.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.